LAKE v. TOWNSHIP OF SPRINGVILLE.

1. MUNICIPAL CORPORATIONS—NEGLIGENCE—HIGHWAYS AND STREETS.
   Where a driver of a horse and vehicle in which plaintiff was a passenger, traveling a little out of the prepared track in order to avoid a quantity of new gravel, saw that he was about to hit a stake that was placed in the road to define it, and, notwithstanding that his horse could have been guided so as to avoid the obstacle, permitted a wheel to pass over the stake throwing plaintiff to the ground, the driver was guilty of contributory negligence, imputable to plaintiff, a voluntary passenger.[1]

2. SAME—NEGLIGENCE—IMPUTED CONTRIBUTORY NEGLIGENCE.
   The want of care of a driver of a private vehicle is imputable to a gratuitous passenger of mature years.

Error to Wexford; Lamb, J. Submitted April 13, 1915. (Docket No. 65.) Decided July 23, 1915.

Case by George A. Lake against the township of

[1]As to imputed negligence of driver to passenger, see notes in 8 L. R. A. (N. S.) 597; L. R. A. 1915 A. 761.

Springville for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Gaffney, Miltner & Millington,* for appellant.

*Fred C. Wetmore,* for appellee.

STEERE, J. Plaintiff brought this action in the circuit court of Wexford county to recover damages for personal injuries sustained by falling from a wagon in which he was riding along a highway in defendant township. From a judgment upon directed verdict for defendant, he brings the case here for review upon a writ of error; the material assignment being that the trial court erred in ruling, as a matter of law, that the accident resulted, in whole or in part, from his negligence, or, more specifically, from negligence of the driver of the conveyance in which he was riding, and which is legally imputable to him.

The accident occurred August 25, 1913, upon a main traveled and improved highway running east and west between the villages of Mesick and Sherman, on a straight, level stretch of the road not far from Mesick, where defendant had regraveled half a mile of the surface of the roadbed during the preceding June and July, stated to have been done "probably 3 weeks, maybe a month, before the accident." The negligence of which plaintiff complains, and to which he attributes the accident, was the horizontal distribution of posts, poles, or other obstructions at intervals of from 2 to 3 rods along either side of the graveled way at right angles to the road, to prevent the public from driving elsewhere than upon the graveled portion. This road was built the season before as a "State reward road," turnpiked about 3 rods wide, with a uniform grade each way from the center, which was about 2 feet higher than the outer edge of the gutters; the central

and highest portion being composed of gravel about 8 inches deep and between 8 and 12 feet wide. The road was inspected in the spring of 1913 by an engineer of the State highway department, who declined to accept it until certain low places and washouts had been regraveled and leveled. The new graveling in question was done to meet this requirement.

Plaintiff lived at Sherman and did business at Mesick, passing over the road daily. On the evening of the day in question, shortly after 6 o'clock, he caught a ride home with an acquaintance, named Yoker, who had driven over from at or near Sherman with a single rig and was returning. Yoker was driving a young horse drawing a single vehicle, bought for a delivery wagon, which he described as a "very heavy open buggy, skeleton body," and said of the horse that it was gentle, "past three years old, and I had driven him all summer and had driven him over this road. He was well broken to the buggy, that was all." Yoker had a boy with him, his nephew, and made room for plaintiff to sit beside him in the single seat by taking the boy in front of him on his lap or, as he states it, between his knees, driving with one arm on each side of the boy, holding to the lines in front. Leaving Mesick, their way first led a short distance north, to where they turned east towards Sherman, and soon thereafter came upon the regraveled portion of the road, along which Yoker drove in the center and upon the gravel for 15 or 20 rods, when he turned diagonally to the left following the track and example of a previous conveyance which he noticed had turned in that direction to get off the gravel. Of his reason he testified:

"It was hard traveling for a horse. * * * It looked pretty hard for a three-year-old colt, and that was the reason I turned off."

At that time the horse was walking, and it was yet

broad daylight. Yoker was familiar with the road and its condition, and knew the purpose of the obstacles at the side, which he states were 3 or 4 rods apart, from 4 to 8 inches in diameter, and not closer than 2 feet from the track. He saw the particular post, to which the accident is ascribed, lying outside the graveled way before he came to it, noticed that the preceding rig, whose track he turned into, had hit the end of it, and with that in mind intended to and thought he would drive so as to miss it, but failed to do so, and one of the wheels on the left side struck the end of the post "with a jar and a noise." He explains this unfortunate lack of accuracy in driving as follows:

"I pulled the horse off from the gravel to get to where it was better traveling, and in so doing—I was on the right-hand side, and Mr. Lake was on the left-hand side. I pulled to the left, and I sat with the boy between my knees, and I had both hands around the boy, driving, and the horse—not seeing that side, if I had been on that side where the post was I might, but the horse hit the post, and he jumped."

When the horse jumped, the lines which Yoker was holding on each side of the boy left his hands, and a series of events, constituting the *res gestæ* of this case, followed in quick succession. The crossbar of the buggy broke as the horse jumped, and as the lines left Yoker's hands plaintiff raised and "grabbed" for them, succeeding in seizing one, which broke at the buckle, and as he surged back he lost his balance, falling backward upon and over the end of the seat upon the rear wheel and to the ground. He was a large, heavy man, and the fall seriously injured him. The colt, being then left free to use his own judgment, with a commendable degree of horse sense for one of his age, returned to the graveled portion of the way, from which he had been diverted, and proceeded rapidly along it towards Sherman, for some distance drawing the buggy, with Yoker and the boy riding, but

eventually stopped in the road of his own accord. Yoker testified that, as they rode, he "grabbed the boy by the shirt collar" and dropped him into the road over the tailboard of the buggy, and then stopped the horse "by talking to him," although he intimated as a concurring cause that the gravel "is what winded him."

The rule is well settled in this State that negligence of the driver of a private conveyance, in which a person of mature years is riding as a voluntary passenger, is imputable to the latter, who is held to have assumed the risk of the driver's negligence. *Mullen* v. *City of Owosso,* 100 Mich. 103 (58 N. W. 663, 23 L. R. A. 693, 43 Am. St. Rep. 436) ; *Colborne* v. *Railway,* 177 Mich. 139 (143 N. W. 32). It was therefore incumbent upon plaintiff, before he could recover, to show that neither he nor Yoker was guilty of any negligence which caused or contributed to his injury.

Whether placing these posts or poles on each side of the "wagonway or travel track," especially intended and prepared for vehicles, might, under some circumstances, amount to an unwarranted obstruction, which would impute negligence to the municipal authorities, only becomes material here if plaintiff has shown freedom from contributory negligence. Plaintiff's evidence shows that the ends of the posts on one side of the wagonway were from 10 to 12 feet from the ends of the posts on the other side. This was built as a State reward road, which the law provides "shall have a wagonway or travel track not less than 9 feet wide," consisting of gravel or shale of a certain depth, etc. Yoker testified that it was perfectly safe driving on this portion of the road; that there was nothing the matter with the gravel, except it had not become thoroughly packed down, and he turned to the side, looking for a better track, more comfortable for him and the horse.

Authorities cited by plaintiff's counsel to the effect that it is negligence to leave objects close to the traveled portion of a highway, the natural and probable consequence of which is to frighten horses, have little application here. There is no proof that these posts of themselves, as they lay by the way, had any tendency to frighten this horse or any other. Yoker's colt is shown to have jumped when driven so that a wheel of the conveyance he was drawing struck the post and moved it with a noise. This unusual event, not the post as he saw it lying there, startled him. Plaintiff makes this clear as follows:

"I was simply talking to him (Yoker) and riding along, and the buggy struck something with a jar and noise. Then I saw a post or pole flop round there, saw it move, and we were quite busy right away then."

This was not the case of an unknown danger or even temporary forgetfulness of a known danger. The horse was walking and went where guided. Yoker saw fit to turn out to the left, and the offending post, as to him, was on the opposite side of the highway from where he sat, outside the travel track, which was "perfectly safe." He saw it before he got to it, had it in mind as he reined to the left towards it, intending, as he states, "to get further away from it than the other folks did," but instead (either through momentary inattention or because the body of plaintiff and the opposite side of the buggy obscured his line of vision) he misjudged and carelessly ran his rear wheel hard against it. With the exercise of a reasonable and ordinary degree of care he easily could have avoided it, and the conclusion is unavoidable that the direct and immediate cause of this accident was his careless driving when turning off from a safe portion of the highway which the municipality had prepared for travel, and upon which he knew it was intended and desired the public should travel. In *Goeltz* v. *Town of Ash-*

*land*, 75 Wis. 642 (44 N. W. 770), the general rule is well stated, citing authorities, as follows:

"All these cases hold the general rule that, when the town authorities prepare a sufficiently safe place for the public travel, 'it is in general the duty of the traveler  *  *  *  to remain in the traveled track, or that part of the highway which to a reasonable width has been graded or prepared for that purpose. Hence, if without some sufficient reason for so doing, or for his own pleasure or convenience, he voluntarily deviates from the traveled track, which is in good condition, and in so doing meets with an accident for some cause outside of the traveled track, the town will not be responsible for any damage or injury which he may sustain.' "

In *Burr* v. *Town of Plymouth*, 48 Conn. 460, where plaintiff turned from the regular track on account of a condition of snow upon it, thinking it safer and better for travel along the side track, it was held that the town was not liable for an error of judgment on the part of the traveler; and the court stated the general principles in passing upon a portion of the charge as follows:

"Towns are not insurers of the absolute safety of travelers; they are only bound to provide reasonable and proper roads for the public travel, and are not obliged to keep the whole width of the highway free from obstructions and in good condition for being driven upon, and the jury ought to have been so instructed, and that if the usually traveled way was reasonably opened and in a safe condition, and the accident happened because the plaintiff chose, or deemed it more judicious, to take the side path, which proved to be unsafe, the town was not liable."

The trial court rightly held that the testimony introduced by plaintiff in this case shows conclusively that the injury could have been avoided by use of ordinary diligence on the part of the driver, and that no recovery can be had because of contributory negligence. *Rohlfs*

v. *Township of Fairgrove*, 174 Mich. 555 (140 N. W. 908) ; *Massey* v. *Columbus*, 75 Ga. 658.

The judgment is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.