PEOPLE v. CARR.

1. CRIMINAL LAW—STATUTE MAKING IT MISDEMEANOR TO OPERATE MOTOR VEHICLE TRANSPORTATION BUSINESS WITHOUT PERMIT MAY BE INVOKED BY ANY ONE.

> The provisions of Act No. 209, Pub. Acts 1923, making it a misdemeanor to engage in transporting persons or property by motor vehicle, for hire, over the public highways, over fixed routes or between fixed termini, without a permit from the public utilities commission, is not in the nature of a special arm given the commission to enforce obedience to its mandates, but is open to invocation by any person.[1]

2. CARRIERS—CRIMINAL LAW—ACT IN DEROGATION OF COMMON-LAW RIGHT TO USE HIGHWAYS STRICTLY CONSTRUED.

> Act No. 209, Pub. Acts 1923, being in derogation of common right to use the public highways, must, so far as its criminal provisions are concerned, be strictly construed, and no intendments beyond such as necessarily go along

---

[1]Criminal Law, 16 C. J. § 497.

with the purpose expressed may be indulged, for it must be assumed that all common rights remain undisturbed except as pointedly taken away or restricted.[2]

3. SAME—SERVICE BY REQUEST NOT PROHIBITED.

Taxicab or other service, by request, may be rendered without a permit over an identical route served by an auto bus system under permit required by Act No. 209, Pub. Acts 1923, for the act is not intended to create a monopoly under permit, but to regulate a service by common carriers.[3]

4. SAME—WHEN SERVICE VIOLATES STATUTE.

Establishing a taxicab service, under schedule, or even intermittent, for the purpose of rendering a general auto bus service in competition with an auto bus service regulated under Act No. 209, Pub. Acts 1923, without a permit to do so, is a violation of said statute.[4]

5. SAME—CRIMINAL LAW—EVIDENCE—SUFFICIENCY.

In a prosecution for violation of Act No. 209, Pub. Acts 1923, requiring a permit to engage in transporting persons or property, by motor vehicle, for hire, over the public highways, evidence *held*, sufficient to sustain conviction.[5]

Exceptions before judgment from Muskegon; Vanderwerp (John), J.     Submitted April 16, 1925. (Docket No. 114.)     Decided May 14, 1925.

Wyatt Carr and Emery Carr were convicted of transporting passengers for hire without a permit from the Michigan public utilities commission. Affirmed.

*F. E. Wetmore,* for appellants.

*Andrew B. Dougherty,* Attorney General, *R. Glen Dunn,* Prosecuting Attorney (*Harry W. Jackson,* of counsel), for the people.

WIEST, J.     Defendants were convicted of a misdemeanor, in transporting persons by motor vehicle,

[2]Statutes, 36 Cyc. p. 1179; [3]Carriers, 10 C. J. § 1069; [4]Id., 10 C. J. § 1069; [5]Id., 10 C. J. § 1069.

for hire, between the city of Muskegon and the village of Hart, without a permit from the Michigan public utilities commission. The prosecution was launched, in justice's court, under complaint of one interested in an auto bus line operated in accordance with the law over a fixed route and on schedule, between the union depot in Muskegon and the hotel in Hart. Defendants prosecute exceptions before sentence. Defendants operated a taxicab service at Hart, rendering service to patrons wishing to visit nearby towns or have cabs go to neighboring towns to get them. They insist that they only went to Muskegon to carry persons hiring them to do so, or to get persons calling them to Muskegon to carry them to Hart; that when so in Muskegon they carried any one on request to Hart; that they maintained no schedule of service or regularity of trips, and had no fixed price for carrying picked up passengers from Muskegon to Hart.

Act No. 209, Pub. Acts 1923, makes it unlawful to engage in the business of transporting persons or property, by motor vehicle, for hire, over the public highways, over fixed routes or between fixed termini, without a permit from the public utilities commission; constitutes such carriers common carriers, subjects the business to regulation of rates, permits the commission to establish routes of operation, defines "fixed routes or between fixed termini" as the "route or termini over or between which said carrier shall usually or ordinarily operate such motor vehicle," and makes determination of "whether such motor vehicle is operated over fixed routes or between fixed termini" a question of fact, and the commission's finding thereon final.

. Is the provision of this statute, making it a misdemeanor to operate without a permit, general in nature, and open to invocation by any person, or in the nature of a special arm given the commission to

enforce obedience to its power and mandates? Some of the provisions of the act lend color to the claim that a prosecution should be launched by the commission, after determination of the fact that an accused is operating in violation of the law. But, taking the act as a whole, this contention cannot be sustained.

The act being in derogation of common right to use the public highways, must, so far as its criminal provisions are concerned, be strictly construed. No intendments, beyond such as necessarily go along with the purpose expressed, can be indulged, for it must be assumed that all rights, theretofore common, remain undisturbed except as pointedly taken away or restricted. Taxicab or other service, by request, may be rendered over an identical route served by an auto bus system under permit, for the act is not intended to create a monopoly under permit, but to regulate a service by common carriers, and render it certain and its continuance permanent. Defendants had a right, in the prosecution of their taxicab service, to solicit business in their line at the village of Hart, and to carry patrons to Muskegon, or elsewhere, over the identical route served by the auto bus system operating under permit from the commission. They also had a right, upon request, to go to Muskegon to get patrons wanting their service to reach the village of Hart or be taken elsewhere, and, while so in Muskegon had a right to take any person, so requesting, to Hart or intermediate points. They could not, however, establish a service between Hart and Muskegon, or elsewhere, under schedule, or even intermittent, for the purpose of rendering a general auto bus service to the public, in competition with the auto bus service under State regulation, without a permit to do so from the commission.

Suppose a resident of the city of Lansing wants to go to the city of Mason, must he take the train or interurban railway or the auto bus running under

permit, or may he hire a taxicab or any other conveyance to take him there, and if he hires a taxicab is the owner thereof guilty of a misdemeanor if, at Mason, he finds some one who wants to come to Lansing and carries him and charges for doing so. Clearly the law was never intended to prevent such a legitimate conduct of business.    Of course if the carriage of passengers is but a subterfuge to avoid regulation and the privilege tax imposed by the act, then there is guilt.

Defendants were not guilty, under their testimony, but were guilty under the testimony introduced by the prosecution.    The proofs introduced by the prosecution tended to show that. defendants' taxicabs, several days a week, were at the depot in Muskegon, with drivers thereof actively soliciting the general public to take their method of conveyance to Hart, rather than the service by auto bus under permit and regulation by the commission.    This, if true, would show they plied active competition with the auto bus regulated service, without compliance with the law. If defendants were doing, without permit, privilege tax and regulation, what the auto bus service was doing under permit, payment of privilege tax and regulation, they have no occasion to complain of their conviction.    The crucial issue of fact was decided against defendants and we must let them abide the determination of the jury.

Convictions affirmed and judgment advised.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.