ROGERS v. WEBER.

NEGLIGENCE—IMPUTED NEGLIGENCE.

The Supreme Court, by an equally divided court, refuses to apply the doctrine of imputed negligence of the driver of a jitney to a passenger who was injured in a collision between the jitney and another automobile while the jitney was unlawfully operating off the route over which it was required to operate by the city ordinance under which it was licensed, although it is agreed that the operator was not, under the circumstances, a common carrier whose negligence is not imputable to a passenger.[1]

Error to Wayne; Webster (Arthur), J. Submitted January 13, 1926. (Docket No. 121.) Decided June 7, 1926. Rehearing denied October 4, 1926

Case by Helen H. Rogers against William G. Weber and another for personal injuries. Judgment for plaintiff. Defendant Weber brings error. Affirmed by an equally divided court.

*William G. Weber, in pro. per.*

*O'Brien & August,* for appellee.

[1]Carriers, 10 C. J. § 1034 (Anno); Negligence, 29 Cyc. p. 548. Persons or company operating passenger automobile for hire as common carrier, see note in L. R. A. 1918F, 468.

An ordinance of the city of Detroit contains the following provision:

"Every vehicle operating as a jitney bus shall display signs, said signs to be furnished by the police department, giving in two-inch type, the route and rate of fare to be charged, and said signs shall be placed on vehicles so used so as not to obstruct the vision of the driver thereof. No jitney shall travel any route but that advertised thereon and no owner or operator shall charge more than the advertised rate of fare. All vehicles so operating shall travel to the end of the advertised route when one or more passengers are riding thereon."

Defendant Conger operated a jitney under this ordinance, his route being Hamilton avenue. Plaintiff saw him on Hamilton avenue and employed him by the hour to convey her to the bank and other places off Hamilton avenue. It was agreed between them that she should fix the compensation. When some distance from Hamilton and at the intersection of Kirby and John R., they came into collision with a machine driven by defendant Weber and she was injured. She brought this suit against both Conger and Weber and had judgment against both. Defendant Weber alone prosecutes error. He requested the court to charge in substance that if the negligence of Conger contributed to the accident plaintiff could not recover against him, Weber, because his negligence would be imputable to her, and this was refused. Both counsel very clearly state the question before us. Appellant says:

"All of the assignments of error cover the single question of whether or not there was error in the action of the trial judge in holding that under the circumstances in this case the defendant Albert Conger was a common carrier of passengers and that his negligence, if any, could not be imputed to plaintiff."

While appellee thus states it:

"The sole question in this case is:
"Was the defendant Conger, in whose car plaintiff was riding at the time of the accident, a common carrier of passengers?"

FELLOWS, J. (*after stating the facts*).    It is settled in this State that where injury is occasioned to passengers by the concurrent negligence of two common carriers, or by the negligence of another and a common carrier, the negligence of the common carrier can not be imputed to its injured passenger.    *Cuddy* v. *Horn,* 46 Mich. 596 (41 Am. Rep. 178) ; *Galloway* v. *Railway,* 168 Mich. 343; and whatever the rule may be in other States—

"The rule is well settled in this State that negligence of the driver of a private conveyance, in which a person of mature years is riding as a voluntary passenger, is imputable to the latter, who is held to have assumed the risk of the driver's negligence." *Lake* v. *Township of Springville,* 187 Mich. 305.

Before taking up the adjudicated cases, it may be well that we have in mind some textbook definitions. In 4 R. C. L. p. 549, it is said:

"Distinction between Private and Common Carrier. The authorities recognize two classes of carriers, viz., private carriers and common carriers.    All persons who undertake, for hire, to carry the goods of another, belong to one or the other of these classes.    The former, like ordinary bailees for hire, are liable only for the injury or loss of the goods intrusted to them when it results from the failure of themselves or their servants to exercise ordinary care.    The latter are liable as insurers for all injury or loss not resulting from the act of God or of the public enemy.    The former are not bound to carry for any reason unless they enter into a special agreement to do so.    The latter are bound to carry for all who offer such goods as they are accustomed to carry and tender reasonable compensation for carrying them; and if they refuse to perform their obligation in this respect, they are liable to respond in damages.    Private carriers are

such as carry for hire, and do not come within the definition of a common carrier. But a private carrier may in a particular case be held to the duties and liabilities of a common carrier if by express contract he assumes the risks of a common carrier."

In the same volume, at page 1059, it is said:

"It is elementary that a common carrier of passengers, whether by land or water, is obliged to receive and carry, for a reasonable compensation, all persons who apply for passage at the proper time and place, and who comply with the regulations of the carrier as to intending passengers, if the accommodations are sufficient, unless there is a proper excuse for refusal."

In 10 C. J. p. 607, it is said:

"The distinction between a public or common carrier of passengers and a special or private carrier of the same is that it is the duty of the former to receive all who apply for passage, so long as there is room and no legal excuse for refusing, while such duty does not rest upon the latter."

Mr. Hutchinson in his work on Carriers (vol. 1 [3d Ed.], § 35), thus defines private carriers for hire:

"Private carriers for hire are such as make no public profession that they will carry for all who apply, but who occasionally or upon the particular occasion undertake for compensation to carry the goods of others upon such terms as may be agreed upon."

And in section 62 he points out that a common carrier is under legal obligation to carry for all and liable for refusal to carry. It is there said:

"Lastly, the party must be under such a legal obligation to carry that an action will lie against him for a refusal without sufficient excuse. 'The true test of the character of a party, as to the fact whether he is a common carrier or not,' says Chief Justice Simpson, 'is his legal duty and obligation with reference to transportation. Is it optional with him whether he will or will not carry, or must he carry for all? If it is his legal duty to carry for all alike who comply with the terms as to freight, etc., then

he is a common carrier, and is subject to all those stringent rules which, for wise ends, have long since been adopted and uniformly enforced, both in England and in all the States, upon common carriers.   If, on the contrary, he may carry or not as he deems best, he is but a private individual, and is invested, like all other private persons, with the right to make his own contracts, and when made to stand upon them.'   'One of the obligations of a common carrier,' says Nisbet, J., 'is to carry the goods of any person offering to pay his hire; with certain specific limitations this is the rule.   If he refuses to carry, he is liable to be sued, and to respond in damages to the person aggrieved, and this is perhaps the safest test of his character.' "

Defendant Conger was licensed to operate a jitney on Hamilton avenue; the sign on his car so showed; he was, in operating such a jitney on Hamilton avenue, a common carrier; he was obligated to accept for carriage over his route for the stated fare all who applied for passage so long as there was room, but he was not obliged to carry any one off his route anywhere they might see fit to go, and in fact if he did so he violated the ordinance.   Plaintiff knew when she made the arrangements with him that it took him off his route.   Their arrangement contemplated that she should not pay a stated sum, but should herself fix the compensation.   He owed no duty to accept as a passenger every one asking such service for such compensation; he owed no duty to accept plaintiff on such terms.   He could accept or reject her offer. If he accepted the offer, it made a contract for private carriage under the definitions above quoted.   He was bound to carry all who applied for carriage on Hamilton avenue until his conveyance was full; he was not bound to carry any one elsewhere.

Numerous cases will be found, and some have been called to our attention, where livery-stable keepers and garage owners have furnished both the conveyance and driver for an agreed consideration, in which it is

held that as to third persons injured by the negligence of the driver, the driver hired by the owner of the conveyance was his agent. Illustrative of this class of cases will be found: *Shepard* v. *Jacobs*, 204 Mass. 110 (90 N. E. 392, 26 L. R. A. [N. S.] 442) ; *Wallace* v. *Keystone Automobile Co.*, 239 Pa. 110 (86 Atl. 699) ; *Gerretson* v. *Rambler Garage Co.*, 149 Wis. 528 (136 N. W. 186, 40 L. R. A. [N. S.] 457) ; *Fairchild* v. *Fleming*, 125 Minn. 431 (147 N. W. 434). As pointed out quite clearly in the last-cited cases, this holding is based on the relation of master and servant. In the instant case this question does not arise, as the defendant Conger was both owner and driver. In *Bartlett* v. *Lanphier,* 94 Wash. 354 (162 Pac. 532), and *City of Providence* v. *Laurence,* 44 R. I. 246 (116 Atl. 664, 22 A. L. R. 888), it has been held that bonds given by jitney owners as a condition of operating in a municipality are not available to passengers injured outside the municipality.

In *Forbes* v. *Reinman & Wolfort,* 112 Ark. 417 (166 S. W. 563, 51 L. R. A. [N. S.] 1164), Forbes hired of defendant an automobile and driver to drive around the city of Little Rock. The question of what care and diligence was required was before the court. If defendants were common carriers one rule applied, if they were private carriers another. After considering the rules laid down by Hutchinson, it was said:

"So it may be said at the outset that the relation between the hirer of the vehicle and the owner is that of bailee and bailor, and the liability of the owner is governed by the rules applicable to such a contract of bailment. Appellees hired to Forbes an automobile and driver to be used by him and his guests in driving around the city of Little Rock; and thus they became a private carrier for hire, and as such were required to use ordinary care and diligence in the performance of the duty imposed upon them by the contract."

In *Georgia Life Ins. Co.* v. *Easter*, 189 Ala. 472 (66 South. 514, L. R. A. 1915C, 456), the Harris Transfer & Warehouse Company did a transfer business and also let out picnic wagons with drivers to parties who desired to drive into the country on picnics.    One Margaret Easter was killed while a passenger in one of these picnic wagons.    She carried insurance and the question before the court was whether she met her death "while a passenger in or on a public conveyance by a common carrier for passenger service."    It was held:

"In this case, under the law, the facts show that, in the particular business in which this transfer company was engaged when the plaintiff's intestate was killed, it was not a common carrier, but only a private carrier for hire."

A somewhat similar question arose in *Rathbun* v. *Ocean Accident Corp.*, 299 Ill. 562 (132 N. E. 754, 19 A. L. R. 140).    Rayle Bros. were licensed taxicab operators in Danville.    Dr. Rathbun frequently obtained from them automobiles with drivers to make his calls.    On one of these occasions when out in the country he received a fatal injury and the question involved was whether there was double liability under his policy in defendant company.    It was said by the court:

"The main question in this case is whether or not plaintiff in error's liability is a single liability of $6,000 and interest or a double liability of $12,000 and interest.    This question is to be determined solely upon the single proposition whether or not Rayle Bros. were common carriers in the service they were rendering Dr. Rathbun at the time that he was accidentally killed.    *    *    *    As to the services performed by Rayle Bros. for Dr. Rathbun, as already suggested, we are unable to see that such services amounted to more than the ordinary services performed by livery-stable keepers.    The fact that Rayle Bros. were licensed in Danville to run taxicabs, if such be the case, can have

nothing to do in determining the question whether or not they were common carriers in rendering the services in question.    The license conferred no privileges beyond the city limits of Danville.    The advertisement in the telephone directory for similar reasons has no direct bearing on the question.    There is no evidence that Rayle Bros. were running a jitney or taxicab line from Danville to Missionfield or from Danville to any other town.    When Dr. Rathbun hired the car it was for a special service to him and he had control of both the car and the driver.    It certainly could not be successfully contended that Rayle Bros. owed him the extraordinary duty of a common carrier, or that they were liable to him, as such, for any injury that he might sustain on such trip.    The automobile was not a passenger car in the sense in which we are now using that term.    It was, in fact, a car contracted for by Dr. Rathbun by a private contract for his use in his profession and under his control."

In *Terminal Taxicab Co.* v. *District of Columbia*, 241 U. S. 252 (36 Sup. Ct. 583), the company brought suit to restrain the public utilities commission from exercising jurisdiction over it.    Thirty-five per cent. of the company's business was taxicab service from the Union Station; 25 per cent. was taxicab service from hotels, and 40 per cent. consisted in furnishing automobiles from its central garage on orders.    It was held that, as to the taxicab service amounting to 60 per cent. of its business, it was a public utility and subject to regulation as to this portion of its business, but that, as to the furnishing of automobiles amounting to 40 per cent. of its business, it was not a public utility and not subject to the regulation of the commission.    It was not, as to this business, a common carrier.    A somewhat similar question was before this court in *People* v. *Carr*, 231 Mich. 246.    Defendants were convicted for violating Act No. 209, Pub. Acts 1923; they insisted that they maintained no regular schedules and only carried passengers as hired so

to do for each trip; in short, they claimed they were not common carriers and not within the purview of the act; there was, however, conflict in the testimony, and this court held that, if they did no more than they claimed they had done, they did not violate the act, but if they did what the people claimed they did, they violated the act, and as the testimony was in conflict we affirmed the conviction.

We are persuaded that the question so clearly submitted to us by counsel of whether the defendant, in his relation to plaintiff, was, when the accident occurred, a common carrier, must be answered in the negative, and, under a long line of decisions not necessary to cite, his negligence was imputable to plaintiff.

The judgment against defendant Weber should be reversed and as to him a new trial should be granted. He should recover costs of this court.

SNOW, STEERE, and CLARK, JJ., concurred with FELLOWS, J.

SHARPE, J. Defendants made no claim on the trial, nor do they here make claim, that plaintiff was herself guilty of any negligence which contributed to her injury. The reasoning of Mr. Justice FELLOWS and the authorities cited and quoted from by him are persuasive that, in the strict sense of the term, the driver of the jitney was not, under the circumstances, a common carrier. That the trial court instructed the jury that he was, and that counsel for plaintiff state in their brief that this is the only question to be considered, do not justify a reversal, if the verdict of the jury may properly be sustained upon the entire record.

The only questions submitted to the jury were whether the defendants (one of whom was the driver), or either of them, were negligent, and the amount of plaintiff's damages. If the question of the driver's

negligence being imputed to plaintiff was properly withheld from the consideration of the jury, it can make no difference whether the reasons stated by the trial court for doing so do, or do not, meet with our approval.

We are, therefore, confronted with the question, and I think should decide it, whether the negligence of the driver of a conveyance in which an adult passenger is riding for hire can be imputed to such passenger.

In *Mullen* v. *City of Owosso,* 100 Mich. 103 (23 L. R. A. 693, 43 Am. St. Rep. 436), this court held that the negligence of the driver of a private conveyance was imputable to an adult who was a voluntary passenger therein. This holding has been consistently adhered to by this court. The earlier cases were cited by Mr. Justice STEERE in the late case of *Holsaple* v. *Menominee Sup'ts of Poor,* 232 Mich. 603.

An examination of these decisions will disclose that the doctrine must rest (as was said by Mr. Justice HOOKER in his dissenting opinion in the *Mullen Case*), "upon the theory that the passenger was so identified with the driver of his vehicle as to be chargeable with his negligence," or "upon an inference that the driver is the agent of the passenger, or at least that he is under the direction and control of the passenger."

A person driving with another for pleasure may be said to take the chances of the care which the person with whom he is riding will exercise. He may be said to have, at least to some extent, the right of direction or control. Or, as stated in 20 R. C. L. p. 163, as a reason for such holding:

"Voluntary entrance into a private conveyance adopts the conveyance for the time being as one's own, and assumes the risk of the skill and care of the person guiding it."

The reasoning which supports these views is not, in my opinion, applicable to a passenger who, in order

to meet a business engagement, or prompted by any other motive deemed by him to be sufficient, secures the service of a conveyance for hire.    He trusts his person to the care of a driver, who, for a consideration, undertakes to deliver him safely.    He has no more control over the driver than if the conveyance were being operated by a common carrier.    He may, in either case, insist on alighting if of the opinion that the driver is careless and that his safety is imperiled by remaining in the conveyance.    But, if such carelessness be first revealed when an accident happens, the law will be harsh indeed which will hold him blameworthy for the driver's recklessness.

If the relation of master and servant exists between the passenger and the driver, and the latter's negligence contributes to the injury of the former, such negligence is imputable to the master.    This rule has also been applied where the driver and passenger are engaged jointly in a common enterprise.    20 R. C. L. p. 161.    It is not, however, applicable to fellow servants.    In *City of Grand Rapids* v. *Crocker*, 219 Mich. 178, it was held that the negligence of the driver of a fire engine was not imputable to a fireman riding thereon in the course of his employment.    It has also been held that the negligence of a master in driving will not as a matter of law be imputed to a servant riding with him in the course of his employment. *Robertson* v. *United Fuel & Supply Co.*, 218 Mich. 271. The reasoning in these cases rests on the lack of control of the passenger over the movements of the driver. An owner of a car has full direction and control over his servant who is driving it.    Upon him rests the duty to see to it that it is carefully driven.    He may insist that the speed be slackened, or the car stopped, if the surroundings seem to him to so require.    He is personally liable for any damage due to the negligence of the driver.    A passenger for hire has a

right to assume that his driver is competent to drive a car and will exercise due care in doing so. He may have had no personal experience in the handling of such vehicles, and may be unaware of the danger signals with which the careful driver is familiar. He may not, however, shut his eyes to dangers which are apparent, and his failure to warn the driver in such cases may constitute negligence on his part. *Robertson* v. *United Fuel & Supply Co., supra; Slee* v. *Neller,* 226 Mich. 151.

In my opinion, we should not extend the doctrine of imputed negligence to a passenger in a private conveyance for hire. The judgment should be affirmed.

BIRD, C. J., and WIEST and MCDONALD, JJ., concurred with SHARPE, J.