### JOHNSON v. MACK.

1. Motor Vehicles—Contributory Negligence—Driver's Negligence Imputable to Guest Passenger.

Ordinary negligence of driver of automobile would be imputable to guest passenger therein, and therefore would bar latter's recovery in action against truck owner for injuries received in collision between automobile and truck due to negligence of both drivers.

2. Negligence—Imputed Negligence—Private Carrier for Hire—Motor Vehicles.

Automobile owner who drove to work every day, and who was paid certain sum for transporting fellow workman to and from work, is private carrier for hire, and therefore his negligence is not imputable to fellow workman, and would not bar latter's recovery in action against truck owner for injuries received in collision between automobile and truck due to negligence of both drivers. Following Lachow v. Kimmich, ante, 1. Wiest, J., dissenting.

Appeal from Monroe; Root (Jesse H.), J.  Submitted October 18, 1932.  (Docket No. 111, Calendar No. 36,811.)  Decided May 16, 1933.

Case by Gilbert L. Johnson against Russell Mack and Norcross Marble Company, a foreign corporation, for personal injuries received when defendant Mack's automobile collided with defendant company's truck standing on the highway.  From verdict and judgment for plaintiff as to defendant company, it appeals.  Affirmed.

*Davidow & Davidow,* for plaintiff.

*Gordon & Williamson,* for defendant Norcross Marble Company.

BUTZEL, J.  At about 6:30 a. m. on February 22, 1930, Gilbert L. Johnson, plaintiff, together with defendant Russell Mack and two other fellow employees, were riding in a Ford car owned and driven by Mack to the Ford Motor Company's factory at Flat Rock, Michigan, their place of employment.  It was quite dark and foggy, especially along the highway outside of the city.  A collision occurred between Mack's car and a heavy truck of the Norcross Marble Company, also a defendant and appellant herein.  The truck, weighing about four tons and carrying a load of eight tons of marble, was stalled on the road when the Ford car ran into it.  Plaintiff was severely injured and brought suit both against Mack and the Norcross Marble Company, claiming each guilty of negligence.

It is claimed that Mack drove in a reckless manner, and that the truck exhibited no proper warning lights.  The record satisfies us that there was ab-

solutely no collusion whatsoever between plaintiff and Mack in bringing the suit, notwithstanding the fact that, during the trial, plaintiff elected to discontinue his action against Mack and proceed solely against the Marble Company. The jury rendered a verdict of $6,771.67, which the judge subsequently reduced to $4,000. In discussing the case, we shall assume that the trial judge was correct in finding that Mack was guilty of negligence, and it consequently becomes unnecessary to review the details of the accident. We limit our discussion to two questions: May Mack's negligence be imputed to plaintiff and thus release the Marble Company? Was there error, as claimed by plaintiff, as cross-appellant, in reducing the amount of the verdict?

It is claimed that, under the facts in the case, plaintiff was either Mack's agent, or else that he, Mack, and the other two passengers in the car were co-adventurers engaged in a joint enterprise. Mack and plaintiff both lived in Monroe, Michigan. Plaintiff learned that Mack drove his Ford car to and from his work at the Ford Motor Company plant daily, accompanied by two of his fellow workers. The record is not clear as to whether payments made by them to Mack, originally towards gas and oil expenses, became fixed charges or not. Plaintiff, on meeting Mack's father, told him of his desire to ride also with Mack and his two other passengers to and from the Ford factory. In testifying as an adverse witness under the statute, Mack, on re-direct and re-cross examination, in his defense, testified the arrangement was as follows:

Re-direct Examination.

By *Mr. Davidow:*

"The first thing I knew about Johnson was when my father gave me some information. From it I did

not know where Johnson lived. I did not go to see Johnson at his home. I did testify on direct examination that I saw him, but I talked with him over the phone. He gave dad his phone number. I called him up. I had to go to work every day. I used my car for that purpose, and had had it about a month and a half. I have a definite expense of running my car to work and back.

"*Q.* Whatever you got from these men was so much velvet for you, wasn't it?

"*A.* For gas and oil.

"*Q.* You were so much ahead on profit when these men paid you?

"*A.* Yes.

"*Q.* The fact that these men were in the car was no great expense to you, was it?

"*A.* No.

"*Q.* Whatever these men gave you was money for yourself, wasn't it?

"*A.* Yes.

"*Q.* When you called up Johnson it was your purpose and idea that here was another man that might give you extra money for hauling him back and forth, that was your idea, wasn't it?

"*A.* It helped out.

"*Q.* That was why you called upon him at his home after the conversation over the phone, that is right, isn't it?

"*A.* Yes.

"*Q.* The Saturday of the first week that you had been taking Johnson back and forth you had a conversation about what it would cost Johnson when you took him to his home, that is right, isn't it?

"*A.* He made the arrangements.

"*Q.* Whoever made the first suggestion, there was such a talk the first Saturday of the first week that you were taking him back and forth, wasn't there?

"*A.* Yes.

"*Q.* And Johnson, after some discussion back and forth with you, agreed to pay you 15 cents each way, did he not?

"*A.* Yes.

"*Q.* That was 30 cents a day or $1.80 a week, if you went for six days, is that right?

"*A.* Yes.

"*Q.* Then the following Monday he actually paid you $1.80?

"*A.* Yes.

"*Q.* It was on that basis that you were carrying him the second week?

"*A.* Yes."

Re-cross Examination.

By *Mr. Gordon:*

"*Q.* Did you do all the driving?

"*A.* Yes.

"*Q.* Tell us how you arrived at 30 cents a day, or $1.80 a week, with Johnson?

"*A.* When he asked me how much I charged, I said that I didn't charge anything, and he said, 'What do the other boys pay? What do you charge the other boys?' and I said, 'I don't charge those, neither; they give me something for gas and other expenses.' He said, 'I wouldn't be satisfied; I'll have to give you something,' and I said, 'Whatever you think it is worth.'

"*Q.* Was it worth that, the fare you charged of gas and oil and car costs?

"*A.* Yes.

"*Q.* Was there any profit in it?

"*A.* No.

"*Q.* Did you have any ambition to make a profit?

"*A.* No."

If plaintiff was a guest of Mack, any contributory negligence of which the latter was guilty would be imputable to plaintiff and he could not recover. *Colborne* v. *Railway,* 177 Mich. 139; *Jewell* v. *Rogers Township,* 208 Mich. 318; *Geeck* v. *Lucken-*

*bill,* 215 Mich. 288; *Gates* v. *Landon,* 216 Mich. 417; *Holsaple* v. *Menominee Superintendents of Poor,* 232 Mich. 603. The question then resolves itself into whether plaintiff was a guest of Mack or not. The testimony of plaintiff, as well as that of Mack, shows that the former definitely agreed to pay the latter 30 cents a day or $1.80 a week for transportation. At the end of the first week, plaintiff owed Mack this sum and paid it the following Monday, the first work day in the week in which the accident occurred. Mack had a legal claim to a fee for the transportation of plaintiff, and could have recovered in a court of law had he not received the fare agreed upon.

Section 4648, 1 Comp. Laws 1929 (the guest act), relieves a person from liability to his guest passengers on account of injury, death, or loss in case of accident, unless caused by gross negligence or wilful and wanton misconduct, except as to those transported on payment of a consideration. In *Naudzius* v. *Lahr,* 253 Mich. 216, 227 (74 A. L. R. 1189, 30 N. C. C. A. 179), the exception is noted. As plaintiff was paying for such transportation, and was not guilty of any negligence himself, the negligence of Mack cannot be imputed to him. A passenger for hire relationship was established here. Whether the negligence of the driver of a private conveyance is imputable to his passenger for hire was a question considered in *Rogers* v. *Weber,* 235 Mich. 180. Inasmuch as the court was divided, no binding rule was laid down. We believe, however, that we should now adopt the rule as set forth in the opinion of Mr. Justice SHARPE, who held that such negligence was not imputable. In affirming the judgment of the lower court, he called attention to the fact that where one secures the service of a conveyance for hire "he

trusts his person to the care of a driver, who, for a consideration, undertakes to deliver him safely. He has no more control over the driver than if the conveyance were being operated by a common carrier." See, also, *Galloway* v. *Railway,* 168 Mich. 343.

It is claimed, however, that plaintiff, Mack, and the other two passengers were engaged in a joint venture; that, as fellow workmen, they were using Mack's car to transport them to their place of work, and then home again. There is much confusion in the law and a conflict of authority as to what constitutes a joint enterprise in the use of an automobile. The facts in the present case, however, are clear, and show distinctly that there was no joint enterprise. The car belonged to Mack. Plaintiff had no control over it whatever. He paid for his transportation. Were Mack solely responsible for the accident, and had defendant Norcross Marble Company been injured, its cause of action would have been against Mack exclusively and not against plaintiff.

If the facts had shown that plaintiff and Mack were engaged in a joint venture, Mack's negligence would be imputable to plaintiff, and defendant would be relieved of liability. *Hanser* v. *Youngs,* 212 Mich. 508; *Frisorger* v. *Shepse,* 251 Mich. 121; *Farthing* v. *Hepinstall,* 243 Mich. 380. In *Frisorger* v. *Shepse,* every member of the party had something to do with the management and control of the enterprise. All parties shared equally in the expense, and the rule of principal and agent, as set forth in *Farthing* v. *Hepinstall, supra,* was controlling. In the present case, plaintiff had absolutely nothing to do with the management or control of Mack's car, but on the contrary, Mack, the owner of the car, had exclusive control over it. He received payment

from plaintiff for the transportation and was solely responsible for the operation of the vehicle. In *Farthing* v. *Hepinstall, supra,* Mr. Justice Mc-DONALD, on behalf of the court, stated as follows:

"To constitute a joint enterprise between a passenger and the driver of an automobile within the meaning of the law of negligence, there must be such a community of interest in its operation as to give each an equal right of control. There must be a common responsibility for its negligent operation, and there can be no common responsibility unless there is a common right of control. It must be held that the driver is acting as the agent of the other members of the enterprise. The rule of joint enterprise in negligence cases is founded on the law of principal and agent. On no other theory could the negligence of the driver be imputable to a passenger. Being parties to the same enterprise, they are assumed to have common control and possession of the machine. Otherwise, each could not be charged with the negligence of the other. It is not necessary to review the cases in which this question is considered. The subject is discussed and many cases are cited in the annotation to *Keiswetter* v. *Rubenstein,* 48 A. L. R. 1049 (235 Mich. 36.)"

The question is briefed in 63 A. L. R. 921, and 80 A. L. R. 308.

The only other question is whether the court erred in ordering a new trial unless plaintiff filed a remittitur reducing the amount of the verdict from $6,771.67 to $4,000. The testimony shows that plaintiff's condition was partly due to a disease that he had contracted previous to the injury. The medical bill was but $29. Proof of permanency of injury was not strong, and there was ample testimony to sustain the action of the trial judge.

The judgment is affirmed, with costs to plaintiff.

FEAD and SHARPE, JJ., concurred with BUTZEL, J.

In view of decision in *Lachow* v. *Kimmich, ante,* 1, we concur. MCDONALD, C. J., and CLARK, POTTER, and NORTH, JJ.

WIEST, J. (*dissenting*). I think plaintiff was a guest notwithstanding his gratuitous act in contributing 30 cents a day toward the expense of operating the automobile.

It being conceded that the owner of the car was guilty of negligence, I think plaintiff barred from having recovery under the rule of imputed negligence.

The judgment should be reversed, without a new trial.