[No. 18132. Department Two. February 15, 1924.]

HANS R. JACOBSON, *Appellant*, v. CHEE LUMBER COMPANY, *Defendant*, CLARK & WILSON LUMBER COMPANY, *Respondent*.[1]

VENDOR AND PURCHASER (136, 137)—REMEDIES OF VENDOR—LIEN—PROVISIONS OF CONTRACT—STATUTES. A vendor has no lien upon the land for the unpaid purchase price, where he conveyed it to a corporation by a deed absolute, taking a separate agreement, which provided that payment was to be made by the sale of corporate stock, if it should be made as contemplated, and if not made, the company was to pay the price by making certain advances and paying obligations of the grantor, giving the grantee "abundant opportunity" or time to pay the balance.

MORTGAGES (22)—ABSOLUTE DEED AS MORTGAGE—EVIDENCE—PAROL TO VARY WRITINGS. The fact that a conveyance of land absolute in form was intended as a mortgage may be shown by parol evidence.

Appeal from a judgment of the superior court for Skamania county, Kirby, J., entered May 9, 1923, upon findings in favor of the defendant, in an action for equitable relief, tried to the court. Affirmed.

[1]Reported in 223 Pac. 12.

*G. E. Hamaker* and *Thos. R. Hamer,* for appellant.
*John F. Logan, Isham N. Smith,* and *Geo. O'Bryon,* for respondent.

FULLERTON, J.—In this action the appellant, Hans R. Jacobson, sought to recover a judgment against the defendant, Chee Lumber Company, and to have the judgment declared a lien and foreclosed as such on certain described real property the legal title to which stands in the name of the respondent, Clark & Wilson Lumber Company. The Chee Lumber Company defaulted. The Clark & Wilson Lumber Company answered, in which answer it put in issue the allegations of the complaint in so far as its interests were affected, and by an affirmative plea sought to have its title quieted against the claims of the appellant. The trial in the court below resulted in a denial of the relief sought by the appellant, and in a decree quieting title as prayed for in the affirmative answer.

The record discloses that, at some time prior to the year 1912, the respondent, Clark & Wilson Lumber Company, owned a tract of timber land situated in Skamania county. This land it sold and conveyed to a corporation known as the Mehama Lumber Company, taking a mortgage on the property to secure certain deferred payments. The corporation defaulted in these payments and the mortgage was foreclosed, the title to the property re-investing on the foreclosure in the respondent. The owners of the capital stock in the Mehama Lumber Company conceived that there was a surplus value in the land over and above what the respondent had invested in it, and they, with others, negotiated for its repurchase. These negotiations resulted in an agreement by the terms of which the respondent agreed to sell the land to the Chee Lumber Company, a corporation which the purchasers had then

organized or were then contemplating organizing. By the further terms of the agreement the respondent agreed to convey the lands to the corporation for a consideration of $10,000 to be paid in cash, $10,000 to be paid within three months after the date of the conveyance, and $25,002.11 to be paid one year after such date, the deferred payments to be secured by a mortgage on the lands conveyed and certain described other lands not then the property of the respondent. The agreement was afterwards consummated according to its terms; the instrument of conveyance and the mortgage being dated as of February 20, 1912. The Chee Lumber Company failed to make the deferred payments or either of them, and the respondent threatened foreclosure. To avoid a foreclosure, the Chee Lumber Company executed a deed to the respondent for all of the mortgaged lands and placed the same in escrow, under an agreement that the deed should be delivered to the respondent in the event that the amount due on the mortgage should not be paid at a named date thereafter. The time of payment was thereafter extended once or more, finally resulting in the delivery of the deed to the respondent, who thereupon caused it to be recorded. This deed was dated April 9, 1913, and recorded April 7, 1916.

Between the date of the execution of the deed and the date of its recording, namely, on May 2, 1914, the Chee Lumber Company and the Mehama Lumber Company, as grantors, conveyed the property to one W. F. Slaughter, reciting in the deed of conveyance that these companies were indebted to Slaughter for advancements made, and further reciting that they were informed and believed that the conveyance from the Chee Lumber Company to the respondent was in equity a mortgage and not an absolute deed. Slaughter, his

wife joining therein, subsequently conveyed his interests in the property to the respondent. Thereafter, for reasons not fully appearing in the record, the respondent instituted a suit to quiet its title to the property as against Slaughter and wife and the Chee Lumber Company, in which the parties named as defendants appeared and contested. The trial resulted in a decree in favor of the respondent.

Of the additional lands included in the mortgage of the Chee Lumber Company to the respondent was a quarter section of land formerly owned by the appellant, Jacobson. This quarter section he conveyed to the Chee Lumber Company by a warranty deed dated January 16, 1912, and two days later on January 18, 1912, entered into the following contract with the company:

"This Agreement made and entered into this 18th day of January, 1912, by and between The Chee Lumber Company, a corporation organized, existing and doing business under and by virtue of the laws of the State of Washington, with its principal place of business at Vancouver, Clarke County, State of Washington, the party of the first part here; and Hans R. Jacobsen, of Oregon City, Clackamas County, State of Oregon, the party of the second part herein, Witnesseth: That the said party of the first part for and in consideration of the acts of said party of the second part as hereinafter contained and set forth covenants and agrees to and with the said party of the second part, as follows, to wit:

"That Whereas, the said The Chee Lumber Company, party of the first part herein, did on the 16th day of January, 1912, purchase from the said second party the following real estate situate, lying and being in the County of Skamania, State of Washington, to-wit: The S.W.¼ of Sec. 14, Township 4 North Range 9 E., of Willamette Meridian, and on said date the said second party did convey said premises to said first party herein by a good and sufficient warranty deed:

"And Whereas the consideration agreed upon by the parties hereto for the said land aforesaid was and is the sum of $9,000.00;

"And Whereas no part of the said agreed purchase price has been paid by the said The Chee Lumber Company and the whole thereof is owing to said second party:

"And Whereas negotiations are now pending for the sale of stock amounting to the sum of $175,000, and that should said negotiations be successful, as is anticipated by said first party, then a sum approximating $25,000 will be available from the proceeds of said sale of stock in about 45 days from the date hereof; and that in about 90 days some $75,000 will be available from said source:

"And Whereas the said party of the second part has agreed to abide the result of the negotiations aforesaid before demanding the payment of the said purchase price of said realty so sold as aforesaid:

"Now Therefore in consideration of the premises the said The Chee Lumber Company hereby covenants and agrees to and with the said second party as follows: That upon the receipt of the first installment arising from the sale of the stock as aforesaid that it will pay unto said second party on said purchase price the sum of $2,000.00; and upon the receipt of the second installment of the money arising from the sale of said stock as aforesaid, to pay the balance of said purchase price in full:

"And in the event of the failure of said negotiations aforesaid the said The Chee Lumber Company hereby agrees to pay to the said second party money sufficient for his needs during the season of 1912. That it will care for and pay the note of said second party owing to the Lumbermen's National Bank of Portland amounting to $700.00 and interest that may accrue; and that it will attend to and care for to the end that the contract may not be forfeited the contract of said second party with the Overlook Land Company for the purchase of certain lots, there being due thereon some $1,500.00; and will give to said second party such money as his necessities may require; and thereafter

the said The Chee Lumber Company will pay the balance of said purchase price as the needs of said second party may require until the full purchase price is paid. The purpose hereof being to give the said company abundant opportunity to pay said purchase price as it is able so to do:

"In Witness Whereof the said party of the first part has caused these presents to be executed by its president and secretary and the corporate seal hereunto attached in pursuance of a resolution of its Board of Trustees, duly made and entered:

"In Presence of:         The Chee Lumber Company
"W. F. Slaughter.        By W. E. Mann, President
"(No Corporate Seal)     By A. A. Welch, Secretary"

The Chee Lumber Company failed to sell its stock as contemplated in the agreement and no money was received from that source. It also failed to pay for the land under the second of the schemes outlined in the agreement, other than it paid the note due from the appellant to the Lumberman's National Bank. Jacobson recorded the contract in the county in which the land was situated in March, 1914.

It is the contention of the appellant that he has, in virtue of his transaction with the Chee Lumber Company, an equitable lien for the unpaid part of the purchase price upon the quarter section of land he sold to that company, and that he is entitled to enforce the lien against the respondent because, as he further contends, it acquired the land from his vendee with knowledge of his lien.

It is our opinion that the evidence does not justify the conclusion the appellant draws therefrom. The deed is an absolute conveyance of the property in fee with warranty of title without reservations of any kind, and the contract, it will be observed, is merely a writing expressing the terms upon which the purchase price of the property will be paid. If, therefore, a lien

upon the land arose in virtue of the writings, it arose from their inherent nature, not from any condition expressed therein. In determining this latter question it must be remembered that there is no such thing as a vendor's lien in this state. In the case of *Smith v. Allen*, 18 Wash. 1, 50 Pac. 783, 63 Am. St. 864, 39 L. R. A. 82, we so held, giving as a reason for the rule, that:

"Under our statutes the vendor may obtain his judgment for the purchase money, or any part thereof, which immediately becomes a lien of record upon the land sold, and under execution he may have the land sold in satisfaction of his judgment, and that, too, freed from any homestead or other claim of exemption. Thus the reason for the maintenance of the lien of the vendor is gone, and the rule has never been applicable to our condition. The adoption of the common law of England by legislative enactment in this state adopts so much of that law as is applicable to our condition, and the lien devised in favor of the vendor by the English chancellors was inapplicable to the legislation and existing conditions in this state."

It must be remembered also that real property is in this state as much the subject of sale and exchange as is any other species of property. While more formality is required in the execution of instruments of conveyance of such property than is required in the execution of instruments of conveyance of certain other species of property all are alike subject to sale and exchange. It follows from these considerations that a party may make such contracts with reference to his lands as he pleases. He may sell it for a consideration to be paid in the future, with a reservation of a lien thereon expressed in the instrument of conveyance for the unpaid part of the purchase price, or he may sell it by deed absolute and reserve a lien by a separate instrument, or he may, on the other hand, sell and convey it absolutely and look to the

personal liability of the purchaser for the payment of the purchase price. Ordinarily the writings themselves determine the character of the transaction, and so conclusively determine it that it is not to be varied by parol.

There is, however, an exception to the parol rule generally recognized and recognized in our own decisions. If the conveyance, whatever may be its form, is in fact intended as security for a debt, the fact may be shown by parol and the instrument declared a mortgage, notwithstanding it in form may be of a contrary purport. As we said in *Dempsey v. Dempsey,* 61 Wash. 632, 112 Pac. 755:

"It may be set down as a premise, from which a correct judgment must flow, that a deed regular in form is presumptive evidence of the highest character that it voices the intention of the parties. Devlin, Deeds (2d ed.), § 1136. This court, acting in harmony with that sentiment that would arrive at the truth of each controversy, has rejected from the first the common-law rule that testimony would not be received to show a deed to be in fact a mortgage, as well as the earlier rule of the chancery courts that it would only be received to show a fraud or mistake, and declared that the true intent of the parties may be shown by any competent testimony; but in such cases the evidence relied upon should be of the most clear, cogent, and convincing character. *Dabney v. Smith,* 38 Wash. 40, 80 Pac. 199; *Reynolds v. Reynolds,* 42 Wash. 107, 84 Pac. 579."

It is upon this rule that the appellant mainly relies to establish his claim in the present case. But his evidence falls far short of establishing the fact. He testified, it is true, that it was his understanding that he was to have a lien on the land he conveyed until the purchase price was paid, but the officers of the corporation with whom he dealt and whom he called to substantiate his claim testified to a directly different ef-

fect. They testified that he was fully informed as to the circumstances and conditions of the transaction; that he understood that the land was not only to be mortgaged to secure the deferred payments on the purchase price of other property, but understood that the capital stock of the corporation was to be sold and pledged to procure the money out of which he was to be paid. This testimony is inconsistent with the idea of a lien, and is in accord with the intent naturally inferable from the language used in the written instruments. On this question of fact the trial court found against the appellant, and plainly we think this court cannot say, as it must say to overturn the finding, that the preponderance of the evidence was against it.

The conclusions reached on the question noticed renders it unnecessary to notice other questions discussed in the arguments. Our conclusion is that the judgment should stand affirmed, and it will be so ordered.

MAIN, C. J., MITCHELL, PEMBERTON, and BRIDGES, JJ., concur.