# CHARLESTON.

## STATE EX REL WILLIAM C. CHAFIN v. STATE ROAD COMMISSION OF WEST VIRGINIA

(No. 6198)

Submitted January 25, 1928.   Decided January 31, 1928.

CARRIERS—*State Road Commission May Grant or Refuse Permit to Operate Motor Vehicles for Transportation, for Hire, Over Regular Routes or Otherwise (Acts 1925, c. 17, §§ 76, 82).*

> Under chapter 17, Acts 1925, the State Road Commission has sound discretion to grant or refuse an application for a permit or certificate of convenience to operate motor vehicles on the public highways for transportation of passengers or property, or both, for compensation, whether the service is proposed to be performed over a regular route between fixed termini, or otherwise.
>
> (Motor Vehicles, 42 C. J. § 116.)

> (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Original proceeding by the State, on the relation of William C. Chafin, for mandamus to be directed to the State Road Commission and others.

*Writ denied.*

*T. C. Townsend* and *M. F. Matheny,* for relator.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondents.

LIVELY, JUDGE:

The purpose of this mandamus proceeding is to compel the State Road Commission to issue to relator, Wm. C. Chafin, permit or certificate of convenience to operate taxicabs.

In December, 1927, relator made application to the commission on the forms prescribed for such purpose to obtain permits to operate four motor vehicles from a taxicab stand located in the city of Logan for the year 1928, enclosing the

tax of $75.00 for each car, and accompanying the application with a sufficient bond, required under the statute, together with application for certificate of title to the four cars. On December 24, 1927, he received notification that his application for permits was refused, and his bond and money were then returned to him. On January 7, 1928, he obtained this alternative writ from judges of this Court.

The petition charges that petitioner, having complied with all the provisions of law and the rules and regulations of the commission in respect thereto, is entitled as a matter of right to receive permits to operate his taxicabs and that the refusal of the commission is unjust, arbitrary and illegal; that the commission in so doing assumed power not given it by law and has adopted the policy of issuing such permits to some applicants and refusing others without any reason for its actions, and has never given to petitioner any reason for refusal.

Relator charges, upon information and belief, that the reason of the refusal was based on a petition filed with the commission by a bus company protesting against the further issuance of taxi licenses to Scites and other persons not including relator, because of violation of law and infringement on the rights of the bus company by such other persons. The claim and argument of relator, tersely stated is, that upon filing application for taxi license in due form accompanied by bond and tender of license fees, it is the ministerial duty of the commission to issue the permits and it has no discretion to refuse; therefore, its action was without authority or power, and was illegal.

The commission in its motion to quash and in its return to the alternative writ, denies that relator is entitled to permits or certificates of convenience as a matter of right. It claims that it has power under the statute to issue such permits or certificates of convenience, or refuse to issue the same; but that it cannot award such permits or certificates until it is satisfied that the service is necessary for the benefit and convenience of the public. The return under oath, says that a large number of applicants for permits or certificates of con-

venience to render taxi service in the city of Logan and vicinity had filed applications for continued service during the year 1928, among whom were applicants whose operations had been satisfactory; that adequate service was being rendered by other carriers; that the commission through its officers and agents made full and proper investigation of the public necessity demanding additional taxi service at relator's hands, and as a result thereof was of the opinion that there was no such public necessity; and avers that the service sought by the relator is not necessary or convenient for the public. It denies that it acted arbitrarily or without sufficient or reasonable grounds. In a replication to the return relator reiterates that the commission acted arbitrarily and without power; and that inasmuch as relator had never been told why his application was refused, calls upon the commission to produce the report of the investigation it caused to be made on which it acted. In response the commission has filed the affidavits of J. G. Tilton, Assistant Supervisor of Transportation of the State Road Commission, and E. O. Davis, Field Agent of the Commission, whose duties were to observe and report upon the operations of motor cars for hire. Affiants say that investigations were made of the public necessity for such service in the city of Logan and vicinity and it was found that seventeen taxicabs were operating therein which affiants found to be more than enough to serve the public; that more taxicabs were operating therein than in other cities and towns of the State in ratio to the population; that application had been made for nineteen cars for the year 1928, not including relator; and that upon the reports made, the commission considered the public necessity and convenience would be adequately served by limiting its number to twelve instead of allowing twenty-three to operate. These affidavits are in no way controverted.

These pleadings clearly raise the issue accentuated by the briefs and oral argument. Relator says the commission has no discretion to refuse to grant to an applicant a taxi license when that applicant makes application in proper form accompanied by bond and license fees, and that the permit to oper-

ate must be granted as a matter of right. That proposition is controverted by respondent which asserts that it has the power, and it is its duty to grant or refuse, always keeping in mind the interest and convenience of the public, and hence has discretion which cannot be controlled by mandamus. Both parties rely on the statute; and agree that an interpretation of the statute (if it needs interpretation), is decisive of the issue.

Unquestionably the legislature has the power to regulate the use of the public roads and the traffic thereon, for roads are so intimately woven into the life and affairs of civilized people that all persons as well as almost every known article of barter and trade are at some time found traveling, or in transportation thereon. A person's right to travel on the roads or transport his goods cannot be denied, but when using the roads in his private capacity he must obey "the law of the road". When he uses the public roads as a business for private gain, the power to permit, refuse or regulate is more varied and extensive than when he uses them in the ordinary way. *Ex parte Dickey*, 76 W. Va. 576. The object of the act, in which the provisions pertinent to this case are found, is to put into one comprehensive statute a complete system of laws governing the construction, reconstruction, maintenance and repair of all public roads, ways and bridges, and the regulation of traffic thereon. The state road commission is the executive head of this system with broad powers, including the right to make rules and regulations not inconsistent with the provisions of the act. Its administration of this system puts it in close touch with the road conditions and needs of every part of the State. It necessarily takes note of the conditions which are dangerous to traffic and safe passage, as well as the density of population and amount and character of traffic. The volume of traffic and travel dictates the width of the roads and the width of the hard surface. Efforts for expeditious and safe use of the roads bring problems, which these eminent and trained members of the commission are required to solve daily, and which they have bravely and well met. This intimate knowledge brought about

by constant contact ought to, and no doubt has, familiarized the commission with existing conditions. The necessities and convenience of the various communities with respect to the travel and traffic over the roads is peculiarly within their cognizance and administration. Necessarily they should have wide discretion in administration matters where no private right of property is involved, and such seems to be the policy of the act. But we are wandering from the issue here presented. Does the statute give any discretion to the commission to grant or refuse the issuance of a license to operate a taxicab? Can it take into consideration the public necessity or non-necessity for such service Sec. 76, chap. 17, Acts 1925, says that no motor vehicle shall be driven on the public ways until the owner shall have first obtained a license or certificate of registration therefor. If the owner is to use the motor vehicle in the transportation of passengers or property, or both, for compensation, he shall so certify, "and shall, as a condition precedent to securing of such licenses or certificate of registration, obtain a *certificate of convenience* from the State Road Commission in the manner hereinafter provided." By the plain terms of this section any owner who intends to transport passengers or property in his car for compensation cannot get a license to operate that car, or receive a certificate of registration until he has obtained from the commission a *certificate of convenience*. It is contended that a taxicab owner is not required to secure a certificate of convenience, but a permit only. It will be noted that the section just referred to (sec. 76), does not limit the requirement to taxicabs or any other class of vehicles, or to any particular service. Its terms are broad and comprehensive requiring every owner who intends to use his car for hire to obtain a *certificate of convenience*, before he is entitled to run his car, or have it registered. However, it is argued that the language used in this section does not mean that certificate of convenience is required for a taxi when sec. 82 is considered with reference to class "H" motor vehicles which class includes public livery vehicles, cars for hire or for rent, taxicabs, bus lines, truck lines and any other transportation of

passengers or property for compensation, without regard as to whether such operation is between fixed termini or over regular routes or otherwise. That sec. 82 says that no motor vehicle shall be operated over the public ways for transportation of passengers or property, or both, for compensation until the owner or operator shall have first made application to and received from the commission a *permit or certificate of convenience* to operate such vehicle. Then the section states what the application for such permit or certificate shall contain, such as the financial condition of the applicant, and the capacity and condition of the car or cars; and if the service is to be over a fixed route or between fixed termini, then the schedule proposed and the rates to be charged; and if not between termini or over regular route, then such other matters as the commission may require. Class H-3 are vehicles operating for hire not running over a fixed route or between fixed termini; and the commission has power to grant a *certificate* to such applicant, provided he does not propose to operate upon a regular schedule, but who is privately employed for a specific trip, and who will not solicit or receive patronage along a route between fixed termini for which a certificate has been granted. That section then provides that the commission may grant a certificate of convenience or refuse, or grant for partial exercise of the privilege sought, and impose terms and conditions as public convenience and necessity require. It is then provided that no such certificate of convenience shall be issued until it shall be established to the satisfaction of the commission, that the privilege is necessary or convenient for the public, and the service is not being adequately performed at the time by some other person, partnership or corporation. The section then goes on to say that the commission may issue any *certificate of convenience* for such length of time not in excess of five years, provided that motor vehicles operated for transportation of passengers or property, or both for compensation and not running over a regular route or between fixed termini, or not having a regular time schedule, shall be granted such *certificate* only until the first day of January next following. In this part of the

section just summarized, the legislature has used the words *"certificate of convenience"*, as the requirement for class H-3 motor vehicles to which relator belongs. These sections, pertinent here, have been summarized because relator's counsel says the statute cannot be construed to mean that a taxicab must have a *"certificate of convenience"*. This conception is brought about by the use of the words "permit or certificate of convenience" as above set out, and it is argued that because the two terms are used, it was intended that "permits" should apply to taxicabs and "certificates of convenience" to bus lines, or cars operating between fixed termini under schedule. We can see no distinction between permits and certificates of convenience. They are used interchangeably and mean the same thing. Such is the practical construction given by the administrative body in the issuance of authority to operate either class of cars. And when we revert to the positive words in sec. 76, to the effect that no person shall obtain a license to operate a car for hire or have such car registered until he has obtained a *certificate of convenience;* and then look to the provision that *"certificates of convenience"* shall not be issued to care for hire not operating over fixed route or between fixed termini, for a period between the 1st day of January next following, we cannot hold that the use of the words "permit" or "certificate of convenience" in other parts as above set out, will change or nullify the positive terms. One part is positive and clear, while the other is inferential, and cloudy to say the least. Citation is made to decisions from other jurisdictions, *State* v. *Boyd Transfer Company,* 168 Minn. 190; and *Carlsen* v. *Cooney,* 123 Wash. 441, for the proposition that the term certificate of convenience as used in their statutes does not apply to vehicles which are not regularly operated between fixed termini, or over regular routes. We are governed by our own statute. An inspection of the two cases cited reveals that the decisions were controlled by the peculiar provisions in the statutes of the respective states. Properly construed, our statute authorizes the commission to issue or refuse to issue a certificate of convenience to any applicant who proposes to

operate his car for hire in the transportation of passengers
or property, or both, whether the service be, or be not, ren-
dered on regular routes or between fixed termini. What is
the nature and purpose of a certificate of convenience? It is
not for the personal advantage or convenience of an appli-
cant. *Estabrook* v. *Pub. Util. Comm.*, 112 Ohio St. 417; 147
N. E. 761. The convenience is the *public* convenience. The
purpose of such requirement is to permit or compel depend-
able service only where public necessity and convenience re-
quire it. *Choate* v. *Commerce Comm.*, 309 Ill. 248; *People* v.
*Carr*, 231 Mich. 246; *Davis* v. *Nickell*, 126 Wash. 421. Our
statute says that no certificate of convenience shall be issued
by the commission until it shall be established to the satisfac-
tion of the commission, after a proper investigation, that the
privilege so sought is necessary or convenient for the public,
and that the service is not being adequately performed by
another. Sec. 82, (Class H) chap. 17, Acts 1925. It is argued
that an inquiry into the needs and convenience of the public
in respect to the operation of a mere taxicab permit or certifi-
cate is preposterous and unwieldy, and that while the commis-
sion has formulated rules for ascertaining the public neces-
sity and convenience in the matter of service over fixed routes
and between fixed termini it has made no such rule or regula-
tion respecting applications for taxi service; thus making a
distinction between the two, and thus tacitly interpreting the
statute to mean that no investigation of public necessity and
convenience is required upon application for taxicab service.
That the commission has not formulated such rules, does not
annul its power to do so, if in its judgment it should see fit.
In this case it has made investigation and says that public
necessity and convenience will not be served by the proposed
service by relator. Even though it be conceded that such
investigation for the issuance of authority to operate a mere
taxicab is cumbersome, unwieldy and preposterous, this Court
will not for that reason change the act or criticize the legisla-
tive policy. It is a matter of legislation. Courts must find
the intent of the law from the statute itself. ''The interpret-
ers of the law have not the right to judge of its policy; and

when they undertake to find out the policy contemplated by the makers of the law, there is great danger of mistaking their own opinions on that subject for the opinions of those who had alone the right to judge of matters of public safety." Lewis' Suth. Stat. Con. (2nd ed.), Vol. 2, p. 1072, sec. 581.

The statute clearly gives the commission power to grant or refuse a certificate of convenience to any applicant who applies to conduct a business on the public roads. Discretion is given it in that regard; and it follows that relator does not have absolute right to the permit or certificate of convenience by making application, accompanied by bond and license fees. Relator has not shown a clear legal right to the relief sought. Under the pleadings and proof we cannot hold that the discretion of the commission has been arbitrarily or capriciously exercised, and the peremptory writ is denied.

*Writ denied.*