HOLSAPLE *v.* SUPERINTENDENTS OF POOR OF
MENOMINEE COUNTY.

1. NEGLIGENCE — MOTOR VEHICLES — CONTRIBUTORY NEGLIGENCE A
PROPER DEFENSE EVEN WHERE DEFENDANT IS VIOLATING STATUTE.
In an action for personal injuries received by plaintiff
when the automobile in which she was riding on a trunk
line highway crashed into the rear of defendant's wagon
going in the same direction, where the negligence alleged
was defendant's failure to display a light as required by
the statute (Act No. 126, Pub. Acts 1921), contributory
negligence is a proper defense, even if defendant was
violating the statute.[1]

2. SAME—DUTY TO SO DRIVE THAT AUTOMOBILE CAN BE STOPPED
WITHIN DISTANCE OF VISION.
It is negligence as a matter of law to drive an auto-
mobile along a public highway in the dark at such speed
that it cannot be stopped within the distance that objects
can be seen ahead of it.[2]

3. SAME — DUTY OF DRIVER BLINDED BY APPROACHING LIGHT TO
HAVE CAR UNDER CONTROL.
It is the duty of the driver of an automobile on a public
highway, whose vision is obscured by the glaring lights
of an approaching car, to slacken his speed and have his
car under such control that he may stop it immediately
if necessary.[3]

4. SAME — CONTRIBUTORY NEGLIGENCE IMPUTABLE TO VOLUNTARY
PASSENGER.
The negligence of the driver of an automobile which con-
tributed to the injury of his wife, who was riding with
him, caused by a collision with defendant's wagon, is im-
putable to her.[4]

Case-made from Menominee; Flannigan (Richard
C.), J. Submitted April 24, 1925. (Docket No.
135.) Decided December 22, 1925.

[1]Motor Vehicles, 28 Cyc. p. 37; [2]Id., 28 Cyc. p. 37; [3]Id., 28
Cyc. p. 37; [4]Id., 28 Cyc. p. 38.
On fact that driver of automobile is blinded by glare of light
as affecting liability for automobile accident, see notes in 10
A. L. R. 294; 32 A. L. R. 887.
Effect of failure to display proper lights on liability for in-
juries resulting from collision of automobile and horse, or fright
of horse by automobile, see note in 48 L. R. A. (N. S.) 964.

Case by Lovica Holsaple against the Superintendents of Poor of Menominee county for personal injuries.    Judgment for defendant on a directed verdict. Plaintiff appeals.    Affirmed.

*John J. O'Hara* (*Matt F. Bilik*, of counsel), for appellant.

*Kenneth O. Doyle* (*Doyle & Barstow*, of counsel), for appellee.

STEERE, J.    This action was brought to recover damages for injuries sustained in an automobile accident which occurred about 8:15 in the evening of August 3, 1922, on trunk line highway M-15 between the villages of Daggett and Talbot in Menominee county, Michigan.    Plaintiff was riding with her husband in an automobile which he was driving north. They both saw a car approaching them from the north some distance away.    It was then night-fall and both cars had their headlights turned on.    As they approached each other plaintiff's husband dimmed his headlights and turned on his spotlight, slowing down to about 15 miles an hour as they testify, driving on the right-hand side of the road and watching ahead. The car approaching them from the north did not dim its lights.    So proceeding, the car which plaintiff's husband was driving ran into the rear of a horse-drawn lumber wagon loaded with 16 steel rails which carried no light and was also going north on the right-hand side of the road.    The front wheel and fender of plaintiff's car struck the rear axle and left rear wheel of the wagon which extended into the traveled portion of the highway.    Neither plaintiff nor her husband saw the wagon until they collided with it. The collision "broke the reach of the wagon and four spokes of the left rear wheel, denting the tire and rim of the wheel."    The driver of the wagon testified that he shouted a warning twice to the people

in the car behind him, it was then about a quarter
after eight, "wasn't dark and it wasn't light," their
car and the one then approaching him from the op-
posite direction were the first he saw with lights
turned on, he was sitting on the left side of his wagon
between the front and rear wheels watching and in-
tending to give notice by shouting when they came
along, which he did as the car following him drew
near.   Plaintiff's husband testified that just after the
accident the driver of the wagon said he had
"hollered" at him twice, to which he replied, "I didn't
hear you, you didn't have any light, and I could see
nothing."

Plaintiff was the only person injured by the acci-
dent.   She was sitting on the right-hand side of the
front seat beside her husband.   That she was seriously
and painfully hurt is not disputed.   Just how serious
and permanent her injuries were was an issue of fact.
She testified of the accident in part as follows:

"As we drove along we were talking and I was look-
ing ahead.   I saw a car coming from the north with
its lights on.   As this car came along Mr. Holsaple
turned on the spotlight and dimmed his headlights.
I am sure he wasn't running over 15 miles per hour.
When my husband's car collided with the wagon I was
thrown up in the corner of the car and got struck just
above my eyes, and my nose, and my right side struck
the corner of the car.   My nose and three ribs were
broken and my jaw hurt.   After the accident my
husband took me to Daggett, to Dr. Landsborough."

It was conceded at commencement of the trial that
the county  of Menominee maintained a county poor
farm at Talbot in charge of its superintendents of the
poor, that the driver of the horse-drawn wagon was
an employee there acting under their direction in
drawing the load of rails from Wallace to Talbot.
No question was raised concerning the pleadings or
that the action was not planted against the proper

defendant.   At conclusion of the testimony, on motion of defendant's counsel, the court directed a verdict for the defense, followed by judgment, on the ground of contributory negligence of plaintiff's husband as shown by his own testimony and the undisputed facts attending the accident.

Plaintiff's claim of negligence is based on defendant's violation of Act No. 126, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 4865 [7]), requiring horse-drawn vehicles traveling trunk line highways to display a proper light "from an hour after sunset to one hour before sunrise." It is undisputed that no light was displayed from defendant's horse-drawn vehicle at the time of the accident.   Contributory negligence is a proper defense even if defendant was violating the statute (*Deal* v. *Snyder*, 203 Mich. 273).

Plaintiff was sitting in the front seat of their auto on the right of her husband who sat nearest the center of the road and was driving.   They were talking as they drove along.   Both testified they were looking ahead and watching the road.   They were driving on a long, straight stretch of highway.   Both testified they saw the on-coming lighted car far away and watched it approach.   Both testified they did not hear the warning call of the driver of the wagon just ahead of them on their side of the road going in the same direction, nor see it until they struck it.   The excuse given by each for not sooner seeing it was that the bright lights of the automobile coming from the north blinded them.   There is nothing in the record to show that the approaching automobile at any time changed its lights or did anything to take them by surprise.

Plaintiff's husband who was driving their car testified:

"I saw this car from the north a half mile away. It was a straight view.   The first thing I did when I saw it was to turn on my spotlight and dim my

headlights, as soon as the light shone strong enough to bother me any.   With my headlights on bright I could see between 200 and 300 feet.   With my spotlight and the dimmers on I could see 150 to 200 feet.   With my dimmers on I was going not to exceed 15 miles, and after putting the dimmers on I slowed down.   Traveling at 15 miles an hour, I could bring my car to a stop in 10 or 15 feet by using both brakes.

"*Q.* Where were you when you first saw the wagon?

"*A.* Well, I didn't see the wagon until I hit it.   *   *   *

"*Q.* When the light from the car coming from the north first blinded you, how far were you south of the wagon?

"*A.* Oh, I should judge 100 feet or so."

With his lights as they were and at the speed he was going he could see ahead 150 or 200 feet and could bring his car to a stop in 10 or 15 feet.   He estimated he was 100 feet away from the wagon when the bright lights of the other car first bothered or blinded him.   Even if he was but 15 or 20 feet away he could have stopped and avoided the accident.   The law is—

"well settled that it is negligence as a matter of law to drive an automobile along a public highway in the dark at such speed that it cannot be stopped within the distance that objects can be seen ahead of it." *Spencer* v. *Taylor*, 219 Mich. 110, citing numerous decisions.

*Vide,* also, *Gleason* v. *Lowe, ante,* 300.

If as he claims the driver was confused or blinded by the bright lights of the other car so he could not see, it was his duty to stop or slacken his speed to safety.

"If his vision was obscured by the glaring lights of the approaching car, it was his duty to slacken his speed and have his car under such control that he might stop it immediately if necessary." *Budnick* v. *Peterson,* 215 Mich. 678.

This is the general rule.   In *West Construction Co.*

v. *White,* 130 Tenn. 520 (172 S. W. 301), where the collision occurred between 1 and 2 o'clock in the morning it was said:

"If the lights on the automobile would disclose obstructions only ten yards away, it was the duty of the driver to so regulate the speed of his machine that he could at all times avoid obstructions within that distance. If the lights on the machine would disclose objects further away than ten yards and the driver failed to see the object in time, then he would be conclusively presumed to be guilty of negligence, because it was his duty to see what could have been seen."

In *Pietsch v. McCarthy,* 159 Wis. 251 (150 N. W. 482), a case closely analogous in facts to the instant one, the court said and held as follows:

"The plaintiff testified that he was proceeding at a rate of speed of from ten to thirteen miles an hour; that his vision was so dazzled by headlights of automobiles coming in the opposite direction that he could not see the wagon ahead of him; and that in this situation he proceeded a distance of 100 feet without slacking his speed until he bumped into the wagon, which he did not see until he struck it. It seems clear under these facts that he was guilty of contributory negligence as a matter of law under the decision of this court in *Lawson v. Fond du Lac,* 141 Wis. 57 (123 N. W. 629, 25 L. R. A. [N. S.] 40, 135 Am. St. Rep. 30)."

In directing a verdict for defendant, the trial court held that plaintiff as a voluntary passenger riding with her husband was chargeable with any negligence committed by him which contributed to the accident resulting in her injury. Recognizing former decisions of this court supporting the holding of the trial court on that subject, plaintiff's counsel has assigned error thereon and urges in a well prepared brief, with abundant citation of supporting decisions from other jurisdictions, that this court should overrule those former decisions and apply the doctrine of non-imputable negligence to this case. The rule applied

by the trial court has obtained in this jurisdiction through a long line of decisions for over half a century.   *Lake Shore, etc., R. Co.* v. *Miller,* 25 Mich. 274; *Mullen* v. *City of Owosso,* 100 Mich. 103 (23 L. R. A. 693, 43 Am. St. Rep. 436); *Kneeshaw* v. *Railway,* 169 Mich. 697; *Fike* v. *Railroad Co.,* 174 Mich. 167; *Colborne* v. *Railway,* 177 Mich. 139; *Granger* v. *Farrant,* 179 Mich. 19 (51 L. R. A. [N. S.] 453); *Lake* v. *Township of Springville,* 187 Mich. 305; *Jewell* v. *Rogers Township,* 208 Mich. 318; *Pilch* v. *Yellow Taxicab Co.,* 225 Mich. 484; *West* v. *Railroad,* 229 Mich. 590.   This court is not prepared to add anything touching that contention to what was said in *Mullen* v. *City of Owosso* and *Colborne* v. *Railway, supra.*

The judgment will stand affirmed.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.