# Wytheville

## Dr. H. D. Howe, Who Sues, etc. v. John Jones.

June 14, 1934.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Parrish, Butcher & Parrish,* for the plaintiff in error.

*Channing M. Hall* and *R. E. Booker,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Under review is an automobile accident. It occurred after dark on the 16th day of November, 1931, on the public highway U. S. Route No. 60, about one mile west of Williamsburg, Virginia. This road is paved with eighteen feet of concrete, and has dirt shoulders four to five feet wide. It runs virtually straight east and west for a long distance from the place where the accident occurred.

The defendant's car was going east, followed by the plaintiff's car, which was in turn followed by a motorcycle driven by a traffic officer. All were traveling at a moderate rate of speed. Plaintiff's car was fifty or seventy-five yards behind the defendant's, and gaining somewhat on it. Coming from the east and on the proper side of the road, was a car driven by a colored boy, Southey Braxton. Braxton said he was going twenty to twenty-five miles an hour. Jones said that he "was traveling at a terrific speed." In any event, when these cars were about 200 yards apart Jones was partially blinded

and confused by Braxton's lights. His right wheels slipped from the concrete but he brought his car back and slowed down somewhat as he approached the Braxton car. When he came back on the pavement he did not drive, as he should have done, on the right but drove somewhat to his left. When his right wheels were about the center of the road he struck the left front wheel of the Braxton car which caused the Braxton car to swerve across the road and run into the Howe car which at that time had come to a stop. There is the usual confusion in the estimate of distance, but the traffic officer tells us that the two collisions were about twenty-five feet apart. Jones admits that he was on the wrong side of the road and was blinded by Braxton's lights, though he did not appreciate how far he had gone to the left.

There was a verdict and judgment for the defendant. It is said that they are without evidence to support them, that actionable negligence as a matter of law is demonstrated.

The reasonableness of the conduct of the parties in such circumstances is usually a jury question. This conduct may be so gross as to make an inference of negligence inevitable as where one going from forty to forty-five miles an hour drove into a dust cloud so dense as to obscure the headlights of an approaching car. *Clark* v. *Parker,* 161 Va. 480, 171 S. E. 600. The suggestions of negligence may be so attenuated that a verdict resting upon it could not possibly commend itself to any right-thinking man. Between these extremes lies the great majority of cases and in them negligence is a question of fact and not of law.

██ What, in such circumstances, is the measure of a man's duty? Undoubtedly there are courts of great ability which hold that when vision is temporarily destroyed by glaring lights it is his duty to stop. *House* v. *Ryder,* 129 Me. 135, 150 Atl. 487; *Hammond* v. *Morrison,* 90 N. J. Law 15, 100 Atl. 154; *Holsaple* v. *Superintendents of Poor,* 232 Mich. 603, 206 N. W. 529. But this rule, sound in prin-

·ciple, must be applied in the light of present day traffic conditions. Many highways carry unbroken streams of cars. Sometimes they flash by almost every second and of necessity their lights obscure vision. To hold as a matter of law that one must come to a stop when lights interfere is to say that he must not travel at night.

In *Parenteau* v. *Parenteau,* 51 R. I. 263, 153 Atl. 872, 875 (1931), the court said: "To hold that, when temporarily blinded by headlights, it is always the duty of the driver of an automobile to stop or to so reduce his speed as to be able to stop instantly would make driving at night on roads where there is any considerable traffic extremely difficult, if not impossible. Other traffic conditions permitting, the driver of an automobile whose vision may be temporarily obscured by headlights of an approaching car may pass such car at a reasonable rate of speed without being negligent as a matter of law."

In *Hoffman* v. *Herman* (1932) 107 Pa. Super. Ct. 92, 163 Atl. 452, 453, the court said: "In view of the multitude of automobiles that use our highways at night, it would be too rigid a rule to hold a driver liable for an accident if he does not stop when his vision is affected by approaching cars, provided, of course, he is otherwise free of negligence. Care should be demanded of drivers, but the impractical, the extraordinary, should not be required."

" * * * to say that it is negligence to drive past an automobile in such a situation (*i. e.,* having blinding headlights) is practically to say that it is negligence to drive along a highway in the nighttime at all." *Frowd* v. *Marchbank,* 154 Wash. 634, 283 Pac. 467, 470.

It comes back to this: Drivers on highways must use reasonable care and reasonable care is a flexible standard. Sometimes it means a high degree of care. Its presence or absence is preeminently a jury question. *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77.

In *Williams* v. *State* (1931) 161 Md. 39, 155 Atl. 339, 345, is this fair statement of the duty which rests upon them. ." * * * we cannot sit here oblivious to or in ignorance of

the conditions which constantly confront the drivers of vehicles in such general use as automobiles. When the vision of the driver of a car is so obstructed or obscured by the bright lights of a car approaching from the opposite direction that he cannot see any one in the road in front of him, it is the duty of a driver in the exercise of ordinary and reasonable care to increase his diligence to avoid injury to any one who might rightfully be on the road in front of him."

No hard and fast rule can be adopted. Traffic must move. Sometimes a sudden stop is in itself exceedingly dangerous. Howe's car followed Jones' and was gaining. The two points of collision were only twenty-five feet apart.

Sundry exceptions are taken to instructions. Instruction 3a, offered for plaintiff and refused, after setting out certain statutory provisions, told the jury that if the defendant violated any of these provisions it was negligence, and that if such negligence caused the accident they should find for the plaintiff. This is a well-established rule and finds ample support in many of our decisions. *Standard Oil Co.* v. *Roberts,* 130 Va. 532, 107 S. E. 838; *Lavenstein* v. *Maile,* 146 Va. 789, 132 S. E. 844. But like all general rules it is incapable of universal and literal application. In the instant case undoubtedly the defendant was on the wrong side of the road and the accident would not have occurred had he not been there. The violation of statutes, however, may be due to supervenient causes. An exploding tire might draw a car to the left and cause a collision, but there would be no liability. An emergency for which he was not responsible would have taken the situation out of his control. Something more than the violation of the letter of the statute is at times necessary.

The possibilities of such a contingency were recognized in *Lavenstein* v. *Maile,* 146 Va. 789, 132 S. E. 844, 847, where the court said:

"We do not wish to be understood as saying that there

·could be no case in which an automobile driver would not be guilty of negligence in driving to the left of the road when meeting another car, even in violation of the law of the road. There are numerous decisions which wisely and justly hold to the contrary under the emergency rule, which may be generally stated to be: That an automobile driver, who by the negligence of another, ·and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid an accident or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice; and whether he used reasonable care under the circumstances is ordinarily a question for the jury."

This fair statement of the law was given at the instance of the plaintiff after instruction 3a was refused:

"The court instructs the jury that if they believe from the evidence that the defendant became temporarily blinded by the lights of an approaching car, then it was the duty of the defendant to stop his automobile or reduce the speed thereof, or take such other precautions, so that in the exercise of ordinary care he would not injure other persons lawfully using the highway. If the jury believe from the evidence that the defendant became blinded by the lights of an approaching car, and after becoming so blinded failed to exercise reasonable care under the circumstances then existing, and further believe from the evidence that such failure to exercise rasonable care was the proximate cause of, or combined and concurred with the negligence, if any, of Southey Braxton, so as proximately to cause the plaintiff's damage, then they should find their verdict in favor of the plaintiff against the defendant unless they further believe from the evidence that the plaintiff was guilty of negligence, which efficiently contributed to the accident."

Other instructions, tendered on behalf of the plaintiff and rejected, undertook to tell the jury that if the defendant violated the statute and that such violation was a

proximate or contributing cause of the accident they should find for the plaintiff. For reasons stated they were properly rejected.

■ Looking at this case from the standpoint of the defendant, his vision was obscured by the light of an approaching car. He was then upon his proper side of the road. Out of an excess of caution and to prevent a collision he turned still further to the right. His wheels slipped off the paved surface. In an attempt to come back and in the confusion created by this unlooked-for incident he turned farther to the left than he should have turned. He did not stop but he did somewhat slacken his speed. In such circumstances his negligence was a jury question.

■ It is next said that there was nothing whatever in the record which tended to show contributory negligence or that Howe was driving too close to the Jones car.

Mr. Amory was riding with the plaintiff. He said that when he first noticed the Jones car it was about fifty yards ahead. This was a minute or so before the accident. When it appeared that there might be a collision the Jones car was about seventy-five feet ahead which seems to tell us that it was being rapidly overhauled. The points of these two collisions were twenty-five feet apart. The cement road is eighteen feet wide, from which it follows that plaintiff's car was only sixteen feet west from the point of the Jones-Braxton collision. The possibilities of a collision were recognized, as we have seen, when Howe was seventy-five feet away. It was for the jury to say in the light of possibilities then apparent whether he did or did not exercise reasonable care.

While the case is not free from difficulty, it contains no reversible error, and is affirmed.

*Affirmed.*