# 𝔚𝔭𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

## James Meade Ferguson v. Virginia Tractor Company, Inc.

June 8, 1938.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Gordon B. Ambler,* for the plaintiff in error.

*Thomas O. Moss,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

James Meade Ferguson, plaintiff in error here, and the plaintiff in the trial court, sued the Virginia Tractor Company, Inc., defendant in error in this proceeding, and the defendant in the trial court, for damages for injuries which he sustained by reason of the collision of the automobile which he was driving with a large truck, which belonged to the defendant.

On January 1, 1935, about 9:30 o'clock at night, the plaintiff was driving a V-8 Ford automobile along what is known as the Midlothian Turnpike, in Chesterfield county, Virginia, toward Richmond. When he was within about one mile of the city he met another automobile going from Richmond with very bright headlights. He reduced his speed from about thirty-five miles an hour to twenty-five or thirty miles to pass the car he was meeting in safety. He dimmed his lights and veered to the right, and from that moment he knew nothing more until he regained consciousness at the hospital, to which he was taken.

His car crashed into the defendant's truck, which was parked on the right of the highway also in the direction of Richmond. The truck was without lights, which were functioning at the time, either at its front or at its rear or at any other portion of it. The truck was painted a dark green or blue. It was in a setting, on the side of which was a fringe of green pines. From the rear end of the truck two square pieces of timber, four by twelve, projected from four to six feet. There were no lights on the projecting pieces of timber. There was a small piece of cloth on the end of one of the pieces, which the driver called a red flag. The impact thrust these beams through the windshield of the plaintiff's car, over the front seat and on to the back of the rear seat, tearing the upholstery. The plaintiff's car was telescoped under the rear of the truck. A young lady, who was seated beside the plaintiff, was killed outright and he was seriously and permanently injured. For sixty-eight days he was confined in the Memorial Hospital, where he incurred medical bills and expenses aggregating a very large sum.

The defendant denied negligence and pleaded contributory negligence upon the part of the plaintiff. The court overruled the defendant's motion to strike the evidence at the end of the plaintiff's testimony and, upon all of the testimony for the plaintiff and the defendant and the instructions of the court and a view of the scene of the accident by the jury, a verdict was rendered in favor of the plaintiff for

$5,000. After receiving the matter under advisement, the court sustained the motion of the defendant and set aside the verdict and entered final judgment for the defendant upon the ground that the evidence disclosed that the plaintiff was guilty of contributory negligence as a matter of law. Our concern then is limited to that inquiry.

The negligence alleged against the plaintiff was that under all the facts and circumstances he should have seen the parked truck and should have avoided striking it. The testimony submitted by the defense showed that the truck was parked on the highway, on a slight up-grade, without lights, on a dark night, without moonlight, with two lateral roads within a few feet of the truck, into which it could have been driven, that there was a wide open field adjacent to the turnpike, though it was wet, and that there was a firm shoulder, four feet wide, between the hard surface and the slight depression, which was called a ditch, upon which the truck could have been parked certainly to the extent of its width.

Notwithstanding this set of proven circumstances, the defendant vigorously urges that this court should say, as did the trial court, that the plaintiff, in his failure to see the truck, and driving into it, was guilty, as a matter of law, of contributory negligence which should bar his recovery.

Where the evidence is in dispute, that is, conflicting, the question of contributory negligence is for the determination of the jury. This has been so often enunciated by this court that it has become axiomatic and needs no citation for its reiteration.

The plaintiff was blinded by the glare of the bright lights of the car which was approaching and in close proximity to him. He at once did the two things which were highly consistent with care and prudence and due regard for the safety of his companion, himself and the occupants of the other car. He reduced his speed in an appreciable extent from the entirely lawful rate of thirty-five miles an hour and dimmed his lights. Such conduct is hardly compatible with the notion that one would go headlong into a static

object, if he saw it, or that one would fail to keep, and exercise, the lookout required by law to avoid a disastrous catastrophe. The plaintiff did not see the truck. Did his failure in that respect convict him of negligence as a matter of law?

Mr. J. A. Townsend, a witness for the plaintiff, who was an assistant bookkeeper for Pollard & Bagby, of Richmond, a responsible firm of realtors, in driving in his automobile to Richmond within an hour before the accident, passed the parked truck. He did not see it until he was dangerously near it, in fact within thirty feet. He was driving from twenty-five to thirty miles an hour. He said that the truck was without lights and he described it as looking "like a great big dirty sheet" in front of him. He blew his horn and some man in front of the truck, he couldn't tell in the darkness whether he was colored or white, flashed a light or struck a match and he went by.

J. E. MacFarlane, a witness for the plaintiff, who was employed at the Etchison Hat Company, of Richmond, was driving behind the plaintiff for about seven miles on the night of the accident. He said that just before the plaintiff hit the truck he met a car with real bright lights on it and that he, the witness, could not see the plaintiff after he hit the truck until he was within thirty or forty feet of him. He said that he did not see the truck at all before the accident and that after he passed the car with the bright lights, coming from Richmond, that he had to apply his brakes very firmly to avoid running into the plaintiff's car, and that he would not have succeeded in doing this except for the rear light on his (plaintiff's) car.

H. A. Jennings, another witness for the plaintiff, and a mechanic employed by the Virginia Electric & Power Company, testified that the driver of the truck, a colored man named Taylor, told him that he had had trouble with the lights on the truck for some distance before it was parked.

J. D. Burley, a witness for the plaintiff, after testifying that the truck was without lights, was asked:

"Q. Was the truck parked on the highway or off the highway?

"A. It was more on the highway than it was off the highway. It was enough room there to park a five ton truck off the highway. Besides, it didn't have to have gone but just a little bit further and could have parked where I parked my car and been completely off the highway entirely."

Burley was an employee of the city of Richmond and was driving to Richmond and arrived at the scene of the accident about 10 o'clock at night. He further testified that the truck was out in the highway so far he had to go around it to pass and that two cars could not go abreast of the truck as it was "sitting there." He also testified that the truck was parked between two knolls; that the turnpike, from the scene of the accident west, was not perfectly level; that its topography was of varying grades. The testimony of the witness, Jennings, corroborated that of Burley with respect to the road. Jennings also said that the night was not clear but "plenty dark."

Another witness for the plaintiff, L. G. Woodall, who was a furniture salesman, testified that he was at Mr. Townsend's home on the night of the accident and that his host drove him to Richmond. They left the Townsend home about 9:15 and passed the parked truck before the accident, but did not see it until they were within thirty-five to forty feet of it and that they had just time to avoid striking it. He said their headlights were good and that the truck was not off of the hard surface to any extent; that they saw a man on the ground close to the front of the truck, who either struck a match or flashed a flashlight but that they could not see whether he was white or colored.

The plaintiff testified that it was a very dark night and the bright lights of the oncoming car were directly in his eyes.

J. E. Flippo, a witness for the defendant, who lived on the Midlothian Turnpike opposite the place of the accident,

testified that there was plenty of room there for a truck to be parked off of the road on either side.

State Officer Hubbard, who went to the scene of the accident for the purpose of investigating it, said that the beams extended over the end of the truck five or six feet.

These excerpts from the testimony are noted because they tend to show that the conditions which obtained at the place and time of the accident not only prevented the plaintiff from seeing the truck but also a number of other gentlemen who passed it and, although their lights were not dimmed but shone with their full intensity, did not see it until they were very nearly on it. They had just time to avoid it.

This is not strange nor does it necessarily excite wonderment. The night was dark. The truck was green and its background was green. There were no lights to expose its presence to view. The plaintiff dimmed his lights, as he should have done, and was blinded by the undimmed lights of the car coming in close proximity to him.

It is a matter of common knowledge that it requires an appreciable interval of time before the eyes resume normality after the retina, which is the sensitive membrane of the eye, has been shocked by a glaring light. Of course, there is no help for this. It, with other existent circumstances which have been referred to, satisfactorily accounts for the failure of the plaintiff and others to see the truck and, in our judgment, justifies the verdict of the jury that there was no contributory negligence.

The defendant accentuates the fact that the turnpike was straight for from 450 to 600 feet west of the point of the accident and, *ergo,* the plaintiff should have seen the truck. This does not follow in the face of the circumstances and conditions which we have detailed.

Certain of the testimony which we have recited also shows that there was direct and sharp conflict as to important facts and *indicia,* bearing upon the question of the alleged contributory negligence of the plaintiff, which make it peculiarly a question for the jury.

See the following cases: *DuPont Engineering Co.* v. *Blair,* 129 Va. 423, 106 S. E. 328; *Meanley* v. *Petersburg, etc., R. Co.,* 133 Va. 173, 112 S. E. 800; *Etheridge* v. *Norfolk So. R. Co.,* 143 Va. 789, 129 S. E. 680; *Burr* v. *Virginia R. & P. Co.,* 151 Va. 934, 145 S. E. 833; *Graham* v. *Newburg, etc., Coke Co.,* 38 W. Va. 273, 18 S. E. 584.

■ It was not legally incumbent upon the plaintiff to stop his car. We said in the case of *Howe* v. *Jones,* 162 Va. 442, 174 S. E. 764, 765: " * * * To hold as a matter of law that one must come to a stop when lights interfere is to say that he must not travel at night."

See also, the case of *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77.

■ It is held by this court and a majority of courts elsewhere and most text writers that there is a presumption of ordinary care in favor of the plaintiff and where the defendant relies upon the contributory negligence of the plaintiff the burden of proof rests upon the defendant to show such negligence, unless it is disclosed by the evidence of the plaintiff or may be fairly inferred from all the circumstances. *Richmond, etc., Power Co.* v. *Gordon,* 102 Va. 498, 46 S. E. 772; *Watts* v. *Southern Bell Tel. Co.,* 100 Va. 45, 40 S. E. 107; *Virginia Iron, etc., Co.* v. *Perkey's Adm'r,* 143 Va. 168, 130 S. E. 403; *Southern Ry. Co.* v. *May,* 147 Va. 542, 137 S. E. 493.

The defendant in this case has not carried that burden and the plaintiff's evidence does not disclose his negligence, nor may it be fairly inferred from all the circumstances.

The defendant leans most heavily upon the case of *Harris* v. *Howerton,* 169 Va. 647, 194 S. E. 692. That case is, in important respects, so dissimilar to the case under consideration as to make it, in our opinion, except in its statement of general principles, inapplicable to the present case. There the plaintiff admitted that he knew the custom was to park cars on the streets of Clarksville; there were a number of street lights, which illuminated the immediate area around the cattle truck, making it plainly visible. The strength of the plaintiff's case was much impaired by his

own conflicting statements as to important particulars. There were no beams projecting a considerable distance from the rear of the truck in that case.

The case of *Kinsey* v. *Brugh,* 157 Va. 407, 161 S. E. 41, is cited by the defendant. In that case it was said that the jury found that the defendant was guilty of negligence which was the sole proximate cause of the accident, and that the failure of the plaintiff to display a lighted lamp or lantern upon his buggy traveling over the highway at night was the remote cause, which may have antecedently contributed to it, and whether there was any causal connection between the failure of the plaintiff to do that and the injury was a question of fact for the jury. That case is not appropriate authority here.

*Pratt et al.* v. *Miles,* 166 Va. 478, 186 S. E. 27, is another case in which the accident happened on a well lighted street in the city of Lynchburg. It was charged that the defendants were negligent in operating their motorcycle without the required rear red light. The defendant countered by urging that its failure to have a rear red light was not the proximate cause of the collision; that if the driver of the car did not see the motorcycle and sidecar standing in plain view in a brightly lighted scene how could it be said that he necessarily would have observed the red light, which he claimed was lacking.

There was present the clear-cut, controlling question of proximate cause. The case is not controlling here. It is clearly distinguishable in its major facts.

The defendant cites the case of *Nicholson* v. *Garland,* 156 Va. 745, 158 S. E. 901. In that case Garland, the plaintiff, admitted that he did not see the defendant's car coming from his left because he didn't look to the left. This was sufficient of itself, in the absence of any palliating circumstances, to convict him of negligence which was a proximate cause of the injury.

Other cases cited by the defendant may be readily differentiated from the present case on account of the dissimilarity of the respective facts.

■ The defendant undertook to substantiate its contention by making a number of tests, but the conditions surrounding them were so different from those which operated in the case under consideration as to make them quite valueless as proof of the contentions for which they were offered. The persons making the tests did not dim their lights. They did not pass an oncoming car which blinded them. They were, too, on the *qui vive* looking for an object (the planted or placed truck) which they knew was there, which fact made a deal of difference. We do not attach much importance to the tests, even if they were admissible in evidence. The court properly instructed the jury and the defendant's objections to them were not insisted upon.

The trial court, we think, erred in its judgment in favor of the defendant. We reverse the judgment and reinstate the verdict of the jury and now enter judgment for the plaintiff in the sum of $5,000.00, with the appropriate interest and the legal costs incident to his prosecution of this action.

*Reversed and judgment entered.*