# Richmond

## Body, Fender and Brake Corporation v. R. C. Matter.

January 9, 1939.

Record No. 2001.

Present, All the Justices.

The opinion states the case.

*Williams, Loyall & Taylor,* for the plaintiff in error.

*Rixey & Rixey,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action at law was brought by R. C. Matter, plaintiff, against the defendant corporation to recover damages for injuries sustained by plaintiff by means of a collision between an automobile driven by him and a truck owned and operated by the defendant. There was a trial by a jury which resulted in a verdict and judgment for the plaintiff in the sum of $1,000.00. The accident occurred June 25, 1937, at night on a concrete road in Princess Anne county on what is known as the Shore Drive. The road is approximately eighteen feet wide and at the point of the accident passes through pine woods on both sides of the road and runs northeast towards Ocean View and southwest towards Virginia Beach. A large truck belonging to Sears-Roebuck and Company had stalled in the sand off the road on the bay side of the drive, with the rear of the truck ten to fifteen feet from the edge of the road. In response to a service call, defendant's wrecking truck came to the scene of the accident for the purpose of towing the Sears-Roebuck truck out of the sand. The defendant's wrecking truck was painted a greenish gray. Its body measured three feet high from the running board, and mounted in the body was the wrecking crane. At the moment of impact defendant's truck was standing on the concrete at an angle of approximately forty-five to sixty degrees with the edge of the road and pointing in the general direction of Virginia Beach. The front of defendant's truck was in the center of the road, with its rear practically on the edge of the road opposite the Sears-Roebuck truck. The lights upon defendant's truck cast a gleam diagonally across the road and were not observable by plaintiff who was traveling northeast towards Ocean View.

Plaintiff, in substance, testified that when he approached the place where the trucks were standing there were several cars coming, and in order not to blind the drivers of the

approaching cars, and in order to better observe the edge of the road, he turned the beam of his head-lights down; that some of the approaching cars had the head-lights dimmed and some did not; that he was not blinded to the extent of being unable to see signal lights if any had been shown; that no flares had been placed by the operator of the truck to warn of danger; that the only warning signal given by defendant was the spraying of a flashlight by a boy seventeen years of age who was standing in the center of the road close to the front bumper of the truck; that due to the lights of the approaching cars, it was impossible to observe the light from the flashlight; that he was driving at a rate of speed which did not exceed forty miles an hour; that after passing the last approaching car he observed defendant's truck twenty-five feet in front of him standing diagonally across the road; that he immediately applied the brakes, and veered to the right in order to avoid striking the truck; that as he turned toward the right he saw the Sears-Roebuck truck; that he attempted to turn back to the left and struck both of the trucks.

The only assignment of error is that the court erred in refusing to set aside the verdict and enter judgment for the defendant. The contention of defendant is (1) that defendant was not guilty of actionable negligence, and (2) that plaintiff was guilty of contributory negligence.

The basis for the first contention is that the defendant in the operation of its wrecking car at night for the purpose of removing wrecked or disabled cars or trucks "took all the precautions which were reasonably necessary in the light of the admitted conditions existing."

■ The rule in regard to the operation of a wrecking truck upon the highway while being used for the removal of a wrecked automobile is correctly stated in Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Ed., section 1200, as follows:

"Since it is necessary for the public to have the aid of a wrecker in rescuing disabled or wrecked motor vehicles, persons obstructing a highway with a wrecker for the pur-

pose of such rescue work are not obliged to exercise the highest degree of care, but only reasonable care, to avoid injury to travelers."

■ In the instant case defendant sought to show that a proper warning had been given approaching travelers by the use of a flashlight. Upon this question there was a conflict of evidence and therefore the duty devolved upon the jury to determine whether or not reasonable care had been exercised by the defendant in the operation of its wrecking truck upon the highway. The verdict of the jury resolved the question in favor of the plaintiff. *Ferguson* v. *Virginia. Tractor Co.*, 170 Va. 486, 197 S. E. 438, 440.

■ The further contention of defendant is that the evidence adduced by the plaintiff raises a presumption that the plaintiff was guilty of contributory negligence and that the burden was upon him to establish his freedom from contributory fault. This is a novel way of raising the question of contributory negligence as a matter of law. In our opinion the question of the contributory negligence of plaintiff was also a question for the jury. The main reliance of defendant to support its contention is the alleged admission of plaintiff that the head-lights from approaching automobiles blinded him and prevented him from seeing the obstructing truck.

■ The deduction to be drawn from the contention of defendant is that it was the duty of plaintiff when blinded by the lights from the oncoming cars to slow down or stop his automobile if necessary to avoid an accident.

In *Howe* v. *Jones*, 162 Va. 442, 174 S. E. 764, 765, Justice Holt dealing with a similar question had this to say:

"What, in such circumstances, is the measure of a man's duty? Undoubtedly there are courts of great ability which hold that when vision is temporarily destroyed by glaring lights it is his duty to stop. *House* v. *Ryder*, 129 Me. 135, 150 A. 487; *Hammond* v. *Morrison*, 90 N. J. Law 15, 100 A. 154; *Holsaple* v. *Superintendents of Poor*, 232 Mich. 603, 206 N. W. 529. But this rule, sound in principle, must be applied in the light of present day traffic conditions. Many

highways carry unbroken streams of cars. Sometimes they flash by almost every second and of necessity their lights obscure vision. To hold as a matter of law that one must come to a stop when lights interfere is to say that he must not travel at night."

In *Twyman* v. *Adkins*, 168 Va. 456, 463, 191 S. E. 615, 618, the refusal of the court to give the following instruction was assigned as error:

"The Court instructs the jury that it is the duty of all persons using the highways to keep their vehicles under control at all times, and have due regard for the conditions of the highway, its width and surface; *and while driving at night, it is the duty of drivers to operate their motor vehicles so that they can stop within the range of their lights;* and in this case if you believe from the evidence that the deceased, Lloyd Adkins, immediately preceding, or at the time of said collision was operating the truck of the Carlbrook Dairy in such way and manner that he could not stop after he saw, or should have seen, the defendant's car, in the exercise of ordinary care, and such failure on his part contributed to the accident, then you must find for the defendant."

Holding that the assignment was without merit, Justice Spratley said:

"The court gave the above instruction, omitting the words italicized above.

"The defendant admits that it has never been held as a principle of law in Virginia, that the operator of an automobile must so operate his vehicle that he can stop within the range of his lights, or within the range of his vision. He contends, however, that the language of Virginia Code 1936, section 2154 (109), is broad enough to cover the proposition. A careful reading of that section, however, clearly indicates that it relates to speed on the highway having regard to traffic and other existing conditions.

"He next relies for support to establish such principle, upon legal text-writers and cases from other States. It is not difficult to find authority, which holds that it is the

duty of drivers to operate their motor vehicles so that they can stop within the range of their lights, or within the range of their vision. Such authority, however, comes from other jurisdictions, and in most cases where there are statutes upon which it can be based. However, in many of these States, it has been held in later cases that the rule has no application in cases of emergencies creating unexpected hazards. *Hart* v. *Stence,* 219 Iowa 55, 257 N. W. 434, 97 A. L. R. 546.

"The instruction, as asked for, makes it the express duty of the driver, as a matter of law, to operate his vehicle while driving at night, so that he can stop within the range of his lights. A violation of such rule would make him guilty of negligence *per se.* There is no Virginia statute upon which this can be based.

"In the absence of such statutory provision, we think the application of the rule and language asked for here is too broad."

Our conclusion is that there is sufficient oral and circumstantial evidence adduced by the plaintiff to sustain the verdict of the jury and the judgment of the court.

The judgment of the trial court is plainly right and will be affirmed.

*Affirmed.*