## Staunton

Anthony W. Giannone v. Mozelle June Johnson, Adm'x, Etc.

September 11, 1963.

Record No. 5597.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*E. Waller Dudley*, for the plaintiff in error.

*Oren R. Lewis, Jr.* (*Tolbert, Lewis & FitzGerald*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Mozelle June Johnson, administratrix of the estate of John D. L. Johnson, deceased, the plaintiff, filed a motion for judgment against Anthony W. Giannone, the defendant, seeking to recover damages for the wrongful death of Johnson in an automobile accident.

There have been two trials of this action, with opposite results. At the first trial, Judge Emery N. Hosmer presiding, the issue of Johnson's contributory negligence was submitted to the jury, and the verdict was in favor of the defendant. However, on the motion of the plaintiff, the trial court set this verdict aside and ordered a new trial, on the ground that the court had erred in submitting the question of contributory negligence to the jury.

At the second trial, Judge William D. Medley presiding, the defendant was refused any instructions on the issue of contributory negligence, and the jury returned a verdict in favor of the plaintiff for $17,000.00. The court approved the second verdict and entered final judgment thereon.

The defendant is here on a writ of error. In his assignments of error he alleges that the trial court erred in setting aside the first verdict and in refusing to grant his instructions on contributory negligence at the second trial.

In accordance with established principles, we will first look to the record of the first trial and if we find that the court erred in setting aside the verdict there rendered, that verdict will be reinstated and the proceedings subsequent thereto will be annulled. *Eubank* v. *Hayden*, 202 Va. 634, 635, 119 S. E. 2d 328, *Simmons* v. *Boyd*, 199 Va. 806, 809, 102 S. E. 2d 292.

■ The evidence at the first trial shows that the accident occurred at 6:50 p.m., after nightfall, on March 20, 1961, on Arlington boulevard, U. S. Route 50, in Fairfax county. Arlington boulevard runs east and west, consists of four lanes of travel, each approximately 9½ feet wide, and the east and westbound lanes are divided by a median strip 19 feet 10 inches wide.

At the accident site, Arlington boulevard is straight and nearly level. Rogers drive intersects the boulevard from the north, but does not continue on the opposite side thereof. Rogers drive traffic crosses the median strip by means of a paved opening or cross-over.

The defendant, a Fairfax police officer operating a police cruiser, approached Arlington boulevard on Rogers drive. He stopped before entering the boulevard and then proceeded across the two westbound lanes into the cross-over where he again stopped, turned at a slight angle to the southeast, to permit eastbound traffic to pass before making a left turn.

While the defendant was sitting in his vehicle in the cross-over, a Fairfax county police patrol wagon, being operated by Officer Ellis in an easterly direction on Arlington boulevard, turned left into the cross-over. The wagon stopped to the east of the defendant's vehicle with its front bumper even with the southerly edge of the westbound lanes of the boulevard. The defendant and Officer Ellis engaged in conversation for "a matter of moments."

Meanwhile, Johnson, operating a taxi cab, was proceeding in a westerly direction on Arlington boulevard, in the lane next to the median strip. His vehicle collided with the rear of the police cruiser, crossed the median strip and the eastbound lanes and struck a bank on the south side of the boulevard. The force of the impact turned the cruiser so that it came to rest facing in an easterly direction.

Robert L. Bouchard, a witness called by the plaintiff, testified that he and Johnson had driven side by side along Arlington boulevard from a traffic light "some three blocks" from the scene of the accident; that his speed was 40 miles per hour and that the speed limit was 45 miles per hour; that as he approached Rogers drive he slowed his vehicle to make a right turn and the Johnson vehicle appeared to continue on at its same rate of speed; that he saw the patrol wagon sitting in the cross-over, and as Johnson's taxicab began to pull ahead of him he saw the police cruiser protruding into the highway; that when he (Bouchard) saw the cruiser, Johnson's taxi cab was three car lengths therefrom; that he exclaimed to his wife,

"Good Lord, he cannot see it and he is going to hit it"; that when the impact occurred, he thought Johnson's taxi cab was going to turn over, and that it "seemed to raise way up 3 or 4 feet."

Dr. Harold McCann, a witness for the plaintiff whose testimony was introduced by deposition, testified that Johnson had no vision in his right eye except the ability to perceive light.

Johnson died one month after the accident from a heart attack which his doctors attributed to the injuries he received in the accident.

The crucial question is: Did the trial court properly submit to the jury, at the first trial, the issue of Johnson's contributory negligence?

We are of opinion that this question must be answered in the affirmative.

We are not unmindful of the fact that the verdict of the jury at the first trial has been set aside by the trial court, and that it is not, therefore, entitled to the same weight as a jury verdict which has been approved. However, we must not overlook the principle, of equal dignity, that questions of negligence, whether contributory or primary, are ordinarily for the jury to decide. *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S. E. 2d 850; *Barry* v. *Tyler*, 171 Va. 381, 388, 199 S. E. 496; *Va. Elec. & Power Co.* v. *Wright*, 170 Va. 442, 446, 196 S. E. 580.

A determination, as a matter of law, that a party is guilty of, or is free from, negligence should be made only where the evidence is such that reasonable men could reach but one conclusion thereon; where fair-minded men, weighing the evidence and drawing all just inferences therefrom, would not differ in their views with relation thereto; where the evidence is without conflict and permits of one, and only one, fair result. *Nehi Bottling Co.* v. *Lambert*, 196 Va. 949, 955, 86 S. E. 2d 156; *Penoso* v. *D. Pender Grocery Co.*, 177 Va. 245, 248, 249, 13 S. E. 2d 310.

We have examined most, if not all, of our previous decisions in which a plaintiff has struck another vehicle, or some other object, in the highway, and where contributory negligence has been relied upon as a defense. Where the circumstances were similar to those in the case at bar, we found that the issue of contributory negligence was properly submitted to the jury. *Allen* v. *Brooks*, 203 Va. 357, 124 S. E. 2d 18; *Body, Fender and Brake Corp.* v. *Matter*, 172 Va. 26, 200 S. E. 589; *Ferguson* v. *Virginia Tractor Co.*, 170 Va. 486, 197 S. E. 438; *Armstrong* v. *Rose*, 170 Va. 190, 196 S. E. 613; *Twyman*

v. *Adkins*, 168 Va. 456, 191 S. E. 615; *City of Radford* v. *Calhoun*, 165 Va. 24, 181 S. E. 345; *Waynick* v. *Walrond*, 155 Va. 400, 154 S. E. 522.

In the case before us, Johnson struck the rear of the police cruiser. It was in the trial court, and is here, the plaintiff's theory that Johnson could not see the cruiser because the headlights of the patrol wagon, shining across his lane of travel between his vehicle and the cruiser, created a "shield" through and beyond which he could not see.

This theory is based upon Johnson's version of the accident which he gave to his physician, Dr. Swisher, on the night of the accident and upon the testimony of the witness Bouchard. The doctor testified, from his recollection, that Johnson told him:

". . . He stated that he was driving on the highway and as he approached an intersection he noted a vehicle sitting just off the highway but facing on to it with its lights on. This vehicle did not appear to make any effort to move and consequently the patient proceeded on and just as he got into the lights of this vehicle it then became possible for him to see an obstruction sticking into the highway farther than this other vehicle was, but unlighted, and obscured from his vision because of the lights crossing the highway between him and this other object.

". . . He said by the time he could see it it was upon him and he had no chance to dodge it."

Dr. Swisher conceded, on cross-examination, however, that the only written notation he had made of his conversation with Johnson, in his case history, was, "Patient driving and while blinded by other lights hit another car."

Bouchard testified concerning the effect of the lights of the patrol wagon, as follows:

"Q. Where were the lights from the paddy-wagon?

"A. Directed in this direction across our lane.

"Q. Did they help you to see the police car or hinder you?

"A. Oh, good Heavens, no. I *think perhaps* that *maybe* they blocked our vision. [Emphasis added].

"Q. The lights blocked your vision?

"A. Yes."

It was for the jury to say whether or not Johnson was blinded by the lights of the patrol wagon, as Dr. Swisher wrote in his case history, or whether or not his vision was blocked by the so-called "shield", as the doctor otherwise testified and as indicated by Bouchard's equivocal and confusing testimony. And it was for the

jury, if it believed that Johnson's vision was blinded or blocked, to decide whether he was negligent in failing thereafter to slow the speed of his vehicle and to divert its course.

Furthermore, there were several significant conflicts in the evidence touching upon the question of Johnson's contributory negligence.

In the first instance, there was a conflict as to the position of the police cruiser with relation to Johnson's lane of travel. Lt. Norfolk, the police officer who investigated the accident and who was called as a witness for the plaintiff, said, on cross-examination, that there was "a differential of approximately 3 inches of the cruiser hanging over the westbound lane." Bouchard testified that the rear of the cruiser extended two feet into the highway. The defendant stated that he, "felt reasonably sure all of my car was in the median strip."

The determination of this conflict may have been of controlling effect. If the cruiser extended into the highway only 3 inches, the jury might have been warranted in finding that Johnson's failure to see such a slight protrusion, under the circumstances, was not negligence. On the other hand, if it extended two feet, the jury could properly have concluded, as it obviously did, that Johnson should have seen the obstruction in time to avoid it, but did not, and was, therefore, negligent.

Secondly, there was a conflict concerning the lights on the police cruiser. Johnson told Dr. Swisher that the cruiser was unlighted. Bouchard said that he did not see any rear lights on the cruiser. The defendant insisted that his lights were burning and that his left turn signal was on.

Thirdly, there was a conflict concerning the angle at which the patrol wagon was located in the cross-over. Lt. Norfolk stated, and photographic exhibits support his testimony, that the wagon was sitting at an angle to the northeast, which would have tended to cause its lights to shine into the eyes of westbound motorists. Bouchard testified that the wagon was sitting at a right angle to Arlington boulevard, so that its lights would have been cast directly across the westbound lanes.

The importance of this conflict is apparent from the plaintiff's position in her brief that, "the lights of the patrol wagon did not shine toward Johnson but were perpendicular toward the highway. Thus, he was not blinded by the lights of an approaching car as were the parties in the numerous cases cited by the defendant." The

cases cited by the defendant, some of which have previously been referred to herein, establish the rule that it is for the jury to determine whether a motorist, who claims that blinding lights caused him to collide, has used ordinary care for the safety of himself and others. The plaintiff, by ignoring that evidence which showed that the patrol wagon's lights may have been shining in Johnson's direction, seeks to escape the effect of this rule.

Lastly, there was serious conflict between the testimony of Lt. Norfolk and that of Bouchard as to the measurements of the length of the cross-over and of the width of Rogers drive. This conflict was pertinent because its determination affected the fixing of the relative positions of the vehicles involved immediately prior to the accident and, hence, Bouchard's and Johnson's ability to see the cruiser.

The resolution of such conflicts is a traditional prerogative of the jury and peculiarly within the scope of its function. *Gaines* v. *Campbell,* 159 Va. 504, 512, 166 S. E. 704; *Motor Coaches* v. *Austin,* 154 Va. 148, 152, 152 S. E. 357.

■ The plaintiff contends, however, that even if the issue of Johnson's contributory negligence was for the jury to decide, the verdict should, nonetheless, have been set aside because of alleged errors of the trial court during the first trial.

The plaintiff first says that the court erred in permitting Lt. Norfolk, the investigating officer, to testify on cross-examination that the police cruiser extended into the highway three inches, based upon measurements he had made of marks in the highway and of the length of the cruiser. The plaintiff contends that in so testifying, Lt. Norfolk was permitted to state his own conclusion.

This error, if error it was, could hardly have been prejudicial to the plaintiff. To the contrary, the disputed testimony aided her case because it showed that the cruiser did, in fact, extend into the highway. That was the basis of the plaintiff's charge of negligence against the defendant. It was a fact which the plaintiff had to prove to sustain her claim. And, as has been noted, if the cruiser extended into the highway only the slight amount as shown by the testimony in question, rather than two feet as shown by other testimony, the jury might have been justified had it exonerated Johnson for his failure to see so slight an obstruction.

Next, the plaintiff contends that the court erred in granting instructions B, C and D at the request of the defendant. Each of these instructions dealt with the alleged contributory negligence of Johnson.

The only objection made by the plaintiff to these instructions, at the time they were offered, was that there was no evidence to support them. That is the only complaint which the plaintiff now makes as to instructions C and D. We have already laid that complaint to rest.

Instruction B told the jury of the effect of Johnson's contributory negligence upon the plaintiff's right to recover. In her motion to set aside the verdict, the plaintiff, for the first time, raised numerous objections to the form of this instruction, although at the time it was offered her counsel told the trial court, "I have no quarrel with the language of instruction B." We have examined all of the instructions and, considering them together, find that the plaintiff still can have no quarrel with the language of instruction B.

The first verdict was reached upon sufficient evidence in a fair trial. It should not have been set aside. Accordingly, it will be here reinstated, judgment will be entered here for the defendant, and all proceedings subsequent to the first verdict will be annulled.

*Reversed and final judgment.*